**LEE M. PERLMAN**
**ATTORNEY AT LAW**
**1926 Greentree Road, Suite 100**
**Cherry Hill, New Jersey 08003**
**(856) 751-4224**
**ATTORNEY FOR DEBTORS, CHRISTIANA & THADDEUS NITKIEWICZ**

UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| IN RE: | CHAPTER 13 |
| CHRISTIANA & THADDEUS NITKIEWICZ | CASE NO.: 09-25088 RTL |
| Debtors | |
| CHRISTIANA & THADDEUS NITKIEWICZ | **AP NO.:** |
| Plaintiff/Debtor | **ADVERSARY COMPLAINT** |
| vs. | |
| HOUSEHOLD FINANCE CORPORATION III | |
| Defendant | |

I. INTRODUCTION

1.      This is an action for the reduction of the Defendant's Proof of claim to zero.

II. JURISDICTION AND VENUE

2.      Jurisdiction is conferred on this Court pursuant to the provisions of §1334 of Title 28 of the United Stated Code in that this core proceeding arises in and is related to the above-captioned Chapter 13 case under Title 11 and concerns property of the Debtor and the estate. Venue lies in this district pursuant to 28 U.S.C. § 1391(b).

3.      This Court has both personal and subject matter jurisdiction to hear this case pursuant to § 1334 of Title 28 of the United States Code, § 157(b)(2) of Title 28 of the United States Code.

4.      This Court has supplemental jurisdiction to hear all state law claims pursuant to § 1367 of Title 28 of the United States Code.

### III.  PARTIES

5.       The Plaintiffs in this case is are debtors under Chapter 13 of Title 11 of the United States Code in the above entitled Chapter 13 case number, presently pending before this court.

6.       The Defendant, Household Finance Corporation III is a corporation or other business entity with a principal office address of P.O. Box 21188, Eagan, MN 55121-4201.

7.       Albert Russo is the Standing Chapter 13 Trustee in this case with an address of CN 4853, Trenton, New Jersey 08650-4853.  Although not a party to this action, the Trustee is a party in interest and will receive notice of the adversary proceeding.

### IV. FACTUAL ALLEGATIONS

8.       The Plaintiffs Chapter 13 Bankruptcy was filed on June 11, 2009.

9.       The Plaintiff's 341 hearing was held on July 16, 2009.

10.       The Plaintiff's Chapter 13 Plan was confirmed on October 9, 2009, for 530 x 3 months and $825 x 57 months.

11.       The confirmed plan specified that the Plaintiff's second mortgage with Household Finance Corporation III was to be reclassified from secured to unsecured.  (See Exhibit A)

11.       On June 14, 2004, Household Finance Corporation III filed a Proof of Claim for $97,062.70, listing arrears of $5,875.48 (See Exhibit B).

12.       In the aforementioned Proof of Claim, Household Finance Corporation lists this claim as secured by real estate.

13.       The appraised value of the subject property is $290,652.00.  (See Appraisal Report dated April 20, 2009, attached hereto as Exhibit C.)

14.       The first mortgage on the property, also held by Household Finance, is for $320,322.00. (See Schedule D of the Petition filed herein, as Exhibit D.)

15.       Based on the foregoing, we would ask that the Court enter an Order Reducing the Proof of Claim of Household Finance Corporation III, to Zero.

**WHEREFORE**, the Plaintiff prays for the following relief:

a.      Reduce the Proof of Claim of Household Finance Corporation III, to

Zero.


March 11, 2010                          /s/ Lee M. Perlman
DATE                                    LEE M. PERLMAN, ESQUIRE


/s/ Lee M. Perlman
Lee M. Perlman, Esq.
Law Offices of Lee M. Perlman
Attorney for the Plaintiffs
1926 Greentree Rd, Suite 100
Cherry Hill, NJ 08003
(856) 751-4224
Fax (856) 751-4226

# Exhibit A

UNITED STATES BANKRUPTCY COURT
DISTRICT OF NEW JERSEY

Caption in Compliance with D.N.J. LBR 9004-2(c)

ALBERT RUSSO
CN 4853
Trenton, New Jersey  08650
(609) 587-6888
Standing Chapter 13 Trustee

Order Filed on
2/16/2010
by Clerk U.S. Bankruptcy
Court District of New Jersey

In Re:

THADDEUS NITKIEWICZ
CHRISTIANA C. NITKIEWICZ

Debtor(s)

Case No. 09-25088 / RTL

Hearing Date: 10/06/09

Judge:  RAYMOND T LYONS JR

## ORDER CONFIRMING CHAPTER 13 PLAN

The relief set forth on the following pages, numbered two (2) through three (3) is hereby **ORDERED.**

**DATED: 2/16/2010**

Honorable Judge Raymond T Lyons
United States Bankruptcy Judge

**(Page 2)**
Debtor: THADDEUS NITKIEWICZ      CHRISTIANA C. NITKIEWICZ
Case No: 09-25088 / RTL
ORDER CONFIRMING CHAPTER 13 PLAN

---

The plan of the debtor having been proposed to creditors, and a hearing having been held on the Confirmation of such Plan, and it appearing that the applicable provisions of the Bankruptcy Code have been complied with; and for good cause shown, it is

☒  **ORDERED** that the plan of the above named debtor(s), dated 06/11/09, or as amended on the record at the confirmation hearing is hereby confirmed. The Standing Trustee shall make payments in accordance with 11 U.S.C. § 1326 with funds received from the debtor(s)

☐  **ORDERED** that the debtor shall pay the Standing Chapter 13 Trustee, ALBERT RUSSO, the sum of **$ beginning on    for a period of   months**, which payment shall include commission and expenses of the Standing Trustee in accordance with 28 U.S.C. 586

☒  **ORDERED** that the case is to be set up as a Tier Plan and the debtor shall pay the Standing Chapter 13 Trustee, ALBERT RUSSO, based upon the following schedule, which payments shall include commission and expenses of the Standing Trustee in accordance with 28 U.S.C. 586:

        **$530 for 3 month(s) beginning 07/01/09**
        **$825 for 57 month(s) beginning 10/01/09**

☒  **ORDERED** that general unsecured creditors will be treated as follows:
**THE PLAN IS A POT BASE. GENERAL UNSECURED CREDITORS WILL RECEIVE A PRO-RATA DIVIDEND. THE TOTAL BASE AMOUNT IS: $48,615.00.**

☒  **ORDERED** that the Standing Trustee shall be authorized to submit, ex-parte, an Amended Confirmation Order, if required, subsequent to the passage of the claims bar date(s) provided under Fed. R. Bank. P. 3002

☒  **ORDERED** that the debtor's attorney be and hereby is allowed a fee pursuant to the filed 2016(b) Statement. The unpaid balance of the allowed fee shall be paid to said attorney by the Chapter 13 trustee

☐  **ORDERED** that the attorney for the debtor shall prepare and serve a Wage Order upon the debtor's employer for the Chapter 13 plan payments

☐  **ORDERED** that to the extent that Section 6 of the debtor's plan contains motions to avoid judicial liens under 11 U.S.C. Section 522(f) and/or to avoid liens and reclassify claims in whole or in part, such motions are hereby granted, except as specified here:

*Approved by Judge Raymond T. Lyons  February 16, 2010*

**(Page 3)**
Debtor: THADDEUS NITKIEWICZ    CHRISTIANA C. NITKIEWICZ
Case No:  09-25088 / RTL
ORDER CONFIRMING CHAPTER 13 PLAN

---

☒    **ORDERED** that if the debtor should **fail to make plan payments or comply with other plan provisions** for a period of more than 30 days, the Standing Chapter 13 Trustee may file, with the Court and served upon the Debtor and Debtor's Counsel, a Certification of Non-Receipt of Payment and request that the debtor's case be dismissed.  The debtor shall have ten days within which to file with the Court and serve upon the Trustee a written objection to such Certification

☒    **ORDERED** that upon completion of the plan, affected secured creditors shall take all steps necessary to remove of record any lien or portion of any lien discharged

☐    **ORDERED** that the debtor(s) must provide a market analysis within 30 days or the case will be dismissed.  The Trustee reserves and shall be allowed the right to seek modification of this confirmed plan in the event that the market analysis and/or appraisal provided by the debtor(s) indicates a substantial increase in the value and/or equity in the debtor's property

☐    **ORDERED** that the Standing Trustee is authorized to pay post-petition claims filed pursuant to 11 U.S.C. Section 1305(a), in the amount filed by the post-petition claimant

☒    **ORDERED** that the Standing Trustee is not authorized to pay post-petition claims filed pursuant to 11 U.S.C. Section 1305(a)

☐    **ORDERED** that the debtor(s) must keep the Trustee updated with the status of the debtor(s)' personal injury claim and any non-exempt proceeds of said claim shall be contributed to the plan for the benefit of the creditors

☐    **ORDERED** that, on or before ?, the debtor(s) shall submit to the Chapter 13 Trustee a copy of the filed **Federal and State Income Tax returns** required pursuant to Bankruptcy Code Sections 1325(a)(9) and 1308(a)

☒    **ORDERED** as follows:

SECTION 3b & 6b ARE STRICKEN FROM THE PLAN. MOTION TO RECLASSIFY HSBC MORTGAGE, PACER 11-1 MUST BE FILED BY 3/15/10 OR CLAIM WILL BE PAID AS FILED.

*Approved by Judge Raymond T. Lyons  February  16, 2010*

## Exhibit B

B10 (Official Form 10) (12/08)

| United States Bankruptcy Court District of New Jersey | PROOF OF CLAIM |
|---|---|

Name of Debtor: Christiana C Nitkiewicz and Thaddeus Nitkiewicz   |   Case Number: 09-25088

NOTE: *This form should not be used to make a claim for an administrative expense arising after the commencement of the case. A request for payment of an administrative expense may be filed pursuant to 11 U.S.C. §503.*

Name of Creditor (the person or other entity to whom the debtor owes money or property):
Household Finance Corporation III

☐ Check this box to indicate that this claim amends a previously filed claim.

Name and address where notices should be sent:
Household Finance Corporation III
P.O. Box 21188

Eagan, MN, 55121-4201
Telephone number: 866-824-0824

**Court Claim Number:**
*(If known)*

Filed on:

Name and address where payment should be sent (if different from above):
Household Finance Corporation III
636 Grand Regency Blvd

Brandon, FL, 33510
Telephone number:

☐ Check this box if you are aware that anyone else has filed a proof of claim relating to your claim. Attach copy of statement giving particulars.

☐ Check this box if you are the debtor or trustee in this case.

**1. Amount of Claim as of Date Case Filed:**   $97,062.70

If all or part of your claim is secured, complete item 4 below; however, if all of your claim is unsecured, do not complete item 4.

If all or part of your claim is entitled to priority, complete item 5.

☐ Check this box if claim includes interest or other charges in addition to the principal amount of claim. Attach itemized statement of interest or charges.

**2. Basis for Claim:** Money loaned
(See instruction #2 on reverse side.)

**3. Last four digits of any number by which creditor identifies debtor:** ******8462

☐ **3a. Debtor may have scheduled account as :** _____
(See instruction #3a on reverse side.)

**4. Secured Claims** (See instruction #4 on reverse side.)
Check the appropriate box if your claim is secured by a lien on property or a right of setoff and provide the requested information.

**Nature of property or right of setoff:** ☒ Real Estate   ☐ Motor Vehicle   ☐ Other
Describe:

**Value of Property:** $_____   **Annual Interest Rate** _____%

**Amount of arrearage and other charges as of time case filed included in secured claim,**

if any: 55,875.48   **Basis for perfection:** _____

**Amount of Secured Claim:** $97,062.70   **Amount Unsecured:** $0.00

**5. Amount of Claim Entitled to Priority under 11 U.S.C. §507(a).**

If any portion of your claim falls in one of the following categories, check the box and state the amount.

Specify the priority of the claim.

☐ Domestic support obligations under 11 U.S.C. §507(a)(1)(A) or (a)(1)(B).

☐ Wages, salaries, or commissions (up to $10,950*) earned within 180 days before filing of the bankruptcy petition or cessation of the debtor's business, whichever is earlier - 11 U.S.C. §507(a)(4).

☐ Contributions to an employee benefit plan - 11 U.S.C. §507(a)(5).

☐ Up to $2,425* of deposits toward purchase, lease, or rental of property or services for personal, family, or household use - 11 U.S.C. §507 (a)(7).

☐ Taxes or penalties owed to governmental units - 11 U.S.C. §507 (a)(8).

☐ Other - Specify applicable paragraph of 11 U.S.C. § 507 (a)(__).

**Amount entitled to priority:**
$_____

*Amounts are subject to adjustment on 4/1/10 and every 3 years thereafter with respect to cases commenced on or after the date of adjustment.*

**6. Credits:** The amount of all payments on this claim has been credited for the purpose of making this proof of claim.

**7. Documents:** Attach redacted copies of any documents that support the claim, such as promissory notes, purchase orders, invoices, itemized statements of running accounts, contracts, judgements, mortgages, and security agreements. You may also attach a summary. Attach redacted copies of documents providing evidence of perfection of a security interest. *(See instruction 7 and definition of "redacted" on reverse side.)*

DO NOT SEND ORIGINAL DOCUMENTS. ATTACHED DOCUMENTS MAY BE DESTROYED AFTER SCANNING.

If the documents are not available, please explain:

| Date:
07/18/2009 | **Signature:** The person filing this claim must sign it. Sign and print name and title, if any, of the creditor or other person authorized to file this claim and state address and telephone number if different from the notice address above. Attach copy of power of attorney, if any.
Mess Codilis, L.L.P., as authorized Agent for Creditor by: | FOR COURT USE ONLY |

*[signature]*

Penalty for presenting fraudulent claim: Fine of up to $500,000 or imprisonment for up to 5 years, or both. 18 U.S.C. §§ 152 and 3571.

790624

United States Bankruptcy Court

District of New Jersey

In Re: Christiana C Nitkiewicz
Thaddeus  Nitkiewicz

Bankruptcy Case:
09-25088

Chapter:
13

# ITEMIZATION OF TOTAL CLAIM
# (AS OF THE DATE OF FILING)

| | |
|---|---|
| Principal Balance: | $90,954.88 |
| Total Interest Accrued: | $5,944.58 |
| Payment Late Charges: | $70.20 |
| Accrued Late Charges: | $368.96 |
| Escrow Advances: | $0.00 |
| Property Inspections and Preservation: | $0.00 |
| Property Appraisal Costs: | $0.00 |
| Insufficient Funds / NSF: | $0.00 |
| Previous Foreclosure Fees: | $0.00 |
| Previous Foreclosure Costs: | $0.00 |
| Previous Bankruptcy Fees: | $0.00 |
| Previous Bankruptcy Costs: | $0.00 |
| Post Petition / Pre Confirmation Bankruptcy Fees | $275.00 |
|    (a) Preparation of Proof of Claim - 150.00 | |
|    (b) Plan Review - 125.00 | |

| | |
|---|---|
| Suspense Balance (Subtracted): | $550.92 |
| Total Debt: | $97,062.70 |

Post Petition Payment to commence on 06/28/2009 in the total amount of $952.04.  This payment
consists of $952.04 Principal/Interest and $000.00 Escrow.

*Please note:  The monthly payment listed is accurate as of the date this Proof of Claim was prepared.
Future monthly payments may be subject to change due to normal interest and escrow adjustments.
Monthly payment amounts may be verified by contacting the servicer directly.*

Please note: The monthly payments may be subject to change due to normal interest and escrow adjustments.  Monthly payment amounts may be
verified by contacting the servicer directly.  *This reimbursement is requested pursuant to D.N.J. LBR 2016-1 (j) (3) and the claimant certifies that
all requirements for allowance of this fee have been met.

July 18, 2009

******8462

United States Bankruptcy Court

District of New Jersey

In Re: Christiana C Nitkiewicz
      Thaddeus  Nitkiewicz

Bankruptcy Case:
09-25088

Chapter:
13

# ITEMIZATION OF ARREARAGE CLAIM
## (AS OF THE DATE OF FILING)

| | |
|---|---:|
| Mortgage Payments from 12/28/2008 to 05/28/2009: | $5,712.24 |
| *Additional detail regarding monthly payments is available on the following page.* | |
| Payment Late Charges: | $70.20 |
| Accrued Late Charges: | $368.96 |
| Escrow Shortage (not recouped through payments): | $0.00 |
| Property Inspection and Preservation: | $0.00 |
| Property Appraisal Costs: | $0.00 |
| Insufficient Funds / NSF: | $0.00 |
| Previous Foreclosure Fees: | $0.00 |
| Previous Foreclosure Costs: | $0.00 |
| Previous Bankruptcy Fees: | $0.00 |
| Previous Bankruptcy Costs: | $0.00 |
| Post Petition / Pre Confirmation Bankruptcy Fees | $275.00 |
| (a) Preparation of Proof of Claim - 150.00 | |
| (b) Plan Review - 125.00 | |
| | |
| Suspense Balance (Subtracted): | $550.92 |
| | |
| **Total Pre-Petition Arrearage:** | $5,875.48 |

Post Petition Payment to commence on 06/28/2009 in the total amount of $952.04. This payment
consists of $952.04 Principal/Interest and $000.00 Escrow.

*Please note: The monthly payment listed is accurate as of the date this Proof of Claim was prepared.
Future monthly payments may be subject to change due to normal interest and escrow adjustments.
Monthly payment amounts may be verified by contacting the servicer directly.*

Please note: The monthly payments may be subject to change due to normal interest and escrow adjustments. Monthly payment amounts may be
verified by contacting the servicer directly.    *This reimbursement is requested pursuant to D.N.J. LBR 2016-1 (j) (3) and the claimant certifies
that all requirements for allowance of this fee have been met.

July 18, 2009

*****8462

**United States Bankruptcy Court**

District of New Jersey

In Re: Christiana C Nitkiewicz
Thaddeus  Nitkiewicz

Bankruptcy Case:    09-25088
Chapter:            13

## ITEMIZATION OF MORTGAGE PAYMENTS
## INCLUDED IN ARREARAGE CLAIM
### (AS OF THE DATE OF FILING)

| | |
|---|---|
| Mortgage Payments from: 12/28/2008 to 12/28/2008 | $952.04 |
| Mortgage Payments from: 01/28/2009 to 01/28/2009 | $952.04 |
| Mortgage Payments from 02/28/2009 to 05/28/2009 | $952.04 |
| Mortgage Payments from: to | |
| Mortgage Payments from: to | |
| Mortgage Payments from: to | |
| Mortgage Payments from: to | |
| Mortgage Payments from: to | |
| Mortgage Payments from: to | |
| Mortgage Payments from: to | |
| Mortgage Payments from: to | |

**Total of monthly payments in arrearage claim**                    $5,712.24

# MORTGAGE

07 APR 13 PM 12: 35

[ ] IF CHECKED, THIS MORTGAGE SECURES FUTURE ADVANCES.

THIS MORTGAGE is made this 23RD day of FEBRUARY 20 07 , between the Mortgagor, THADDEUS R. NITKIEWICZ AND CHRISTIANA C. NITKIEWICZ, HUSBAND AND WIFE

(herein "Borrower"), and Mortgagee HOUSEHOLD FINANCE CORPORATION III

a corporation organized and existing under the laws of DELAWARE whose address is 1045 NIXON DRIVE, MOUNT LAUREL, NJ 08054
(herein "Lender").

The following paragraph preceded by a checked box is applicable:

[ X ]    WHEREAS, Borrower is indebted to Lender in the principal sum of U.S. $ 91,695.00 , which indebtedness is evidenced by Borrower's Repayment Agreement dated FEBRUARY 23, 2007 , and extensions and renewals thereof, including those pursuant to any Renegotiable Rate Agreement, (herein "Note"), providing for monthly installments of principal and interest (including any adjustments to the amount of payments or the contract rate if that rate is variable) with the balance of the indebtedness, if not sooner paid, due and payable on FEBRUARY 23, 2037 ;

[ ]    WHEREAS, Borrower is indebted to Lender in the principal sum of $ , or so much thereof as may be advanced pursuant to Borrower's Revolving Loan Agreement dated and extensions and renewals thereof (herein "Note"), providing for monthly installments, and interest at the rate and under the terms specified in the Note, including any adjustments in the interest rate if that rate is variable, and providing for a credit limit stated in the principal sum above and an initial advance of $ ;

TO SECURE to Lender the repayment of (1) the indebtedness evidenced by the Note, with interest thereon, including any increases if the contract rate is variable; (2) future advances under any Revolving Loan Agreement; (3) the payment of all other sums, with interest thereon, advanced in accordance herewith to protect the security of this Mortgage; and (4) the performance of the covenants and agreements of Borrower herein contained, Borrower does hereby mortgage, grant and convey to Lender and Lender's successors and assigns the following described property located in the County of BURLINGTON
State of New Jersey:

ALL THAT CERTAIN PROPERTY SITUATED IN THE TOWNSHIP OF BURLINGTON IN THE COUNTY OF BURLINGTON AND STATE OF NEW JERSEY, BEING MORE FULLY DESCRIBED IN A DEED DATED 08/31/2004 AND RECORDED 10/12/2004, AMONG THE LAND RECORDS OF THE COUNTY AND STATE SET FORTH ABOVE, IN DEED VOLUME 5200 AND PAGE 760. TAX MAP OR PARCEL ID NO.: LOT 6, BLOCK 140.03

ARRIVED

2007 FEB 28 A 8: 55

BURLINGTON COUNTY CLERK

This instrument was prepared by: DANIELLE R. MORRIS
11-11-05 MTG

NJ061101

*NJXXTE42 1CAR2MTG30G0NJ661101 9**NITKIEWICZ             *             ORIGINAL

MB 11336 PG 845

-2-

TOGETHER with all the improvements now or hereafter erected on the property, and all easements, rights, appurtenances and rents, all of which shall be deemed to be and remain a part of the property covered by this Mortgage; and all of the foregoing, together with said property (or the leasehold estate if this Mortgage is on a leasehold) are hereinafter referred to as the "Property."

Borrower covenants that Borrower is lawfully seised of the estate hereby conveyed and has the right to mortgage, grant and convey the Property, and that the property is unencumbered, except for encumbrances of record. Borrower covenants that Borrower warrants and will defend generally the title to the Property against all claims and demands, subject to encumbrances of record.

UNIFORM COVENANTS. Borrower and Lender covenant and agree as follows:

1. Payment of Principal, Interest, Escrow Items, Prepayment Charges, and Late Charges. Borrower shall pay when due the principal of, and interest on, the debt evidenced by the Note and any prepayment charges and late charges due under the Note. Borrower shall also pay funds for Escrow Items pursuant to Section 3. Payments due under the Note and this Security Instrument shall be made in U.S. currency. However, if any check or other instrument received by Lender as payment under the Note or this Security Instrument is returned to Lender unpaid, Lender may require that any or all subsequent payments due under the Note and this Security Instrument be made in one or more of the following forms, as selected by Lender: (a) cash; (b) money order; (c) certified check, bank check, treasurer's check or cashier's check, provided any such check is drawn upon an institution whose deposits are insured by a federal agency, instrumentality, or entity; or (d) Electronic Funds Transfer.

Payments are deemed received by Lender when received at the location designated in the Note or at such other location as may be designated by Lender in accordance with the notice provisions in Section 12. Lender may return any payment or partial payment if the payment or partial payments are insufficient to bring the Loan current. Lender may accept any payment or partial payment insufficient to bring the Loan current, without waiver of any rights hereunder or prejudice to its rights to refuse such payment or partial payments in the future, but Lender is not obligated to apply such payments at the time such payments are accepted. If each Periodic Payment is applied as of its scheduled due date, then Lender need not pay interest on unapplied funds. Lender may hold such unapplied funds until Borrower makes payment to bring the Loan current. If Borrower does not do so within a reasonable period of time, Lender shall either apply such funds or return them to Borrower. If not applied earlier, such funds will be applied to the outstanding principal balance under the Note immediately prior to foreclosure. No offset or claim which Borrower might have now or in the future against Lender shall relieve Borrower from making payments due under the Note and this Security Instrument or performing the covenants and agreements secured by this Security Instrument.

2. Application of Payments or Proceeds. Except as otherwise described in this Section 2 or as may be required by the Note and/or applicable law, all payments accepted and applied by Lender shall be applied in the following order of priority: (a) interest due under the Note; (b) principal due under the Note; (c) amounts due under Section 3. Such payments shall be applied to each Periodic Payment in the order in which it became due. Any remaining amounts shall be applied first to late charges, second to any other amounts due under this Security Instrument, and then to reduce the principal balance of the Note.

If Lender receives a payment from Borrower for a delinquent Periodic Payment which includes a sufficient amount to pay any late charge due, the payment may be applied to the delinquent payment and the late charge. If more than one Periodic Payment is outstanding, Lender may apply any payment received from Borrower to the repayment of the Periodic Payments if, and to the extent that, each payment can be paid in full. To the extent that any excess exists after the payment is applied to the full payment of one or more Periodic Payments, such excess may be applied to any late charges due. Voluntary prepayments shall be applied first to any prepayment charges and then as described in the Note.

Any application of payments, insurance proceeds, or Miscellaneous Proceeds to principal due under the Note shall not extend or postpone the due date, or change the amount, of the Periodic Payments.

3. Funds for Escrow Items. Borrower shall pay to Lender on the day Periodic Payments are due under the Note, until the Note is paid in full, a sum (the "Funds") to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over this Security Instrument as a lien or encumbrance on the Property; (b) leasehold payments or ground rents on the Property, if any; (c) premiums, for any and all insurance required by Lender under Section 5; and (d) Mortgage Insurance premiums, if any. These items are called "Escrow Items". At origination or at any time during the term of the Loan, Lender may require that Community Association Dues, Fees, and Assessments, if any, be escrowed by Borrower, and such dues, fees and assessments shall be an Escrow Item. Borrower shall promptly furnish to Lender all notices of amounts to be paid under this Section. Borrower shall pay Lender the Funds for Escrow Items unless Lender waives Borrower's obligation to pay the Funds for any or all Escrow Items. Lender may waive Borrower's obligation to pay to Lender Funds for any or all Escrow Items at any time. Any such waiver may only be in writing. In the event of such waiver, Borrower shall pay directly, when and where payable, the amounts due for any Escrow Items for which payment of Funds has been waived by Lender and, if Lender requires, shall furnish to Lender receipts evidencing such payment within such time period as Lender may require. Borrower's obligation to make such payments and to provide receipts shall for all purposes be deemed to be a covenant and agreement contained in this Security Instrument, as the phrase "covenant and agreement" is used in Section 7. If Borrower is obligated to pay Escrow Items directly, pursuant to a waiver, and Borrower fails to pay the amount due for an Escrow Item, Lender may exercise its rights under Section 7 and pay such amount and Borrower shall then be obligated under Section 7 to repay to Lender any such amount. Lender may revoke the waiver as to any or all Escrow Items at any time by a notice given in accordance with Section 12 and, upon such revocation, Borrower shall pay to Lender all Funds, and in such amounts, that are then required under this Section 3.

Lender may, at any time, collect and hold Funds in an amount (a) sufficient to permit Lender to apply the Funds at the time specified under RESPA, and (b) not to exceed the maximum amount a lender can require under the Real Estate Settlement Procedures Act (12 U.S.C. Section 2601 et seq.) and its implementing regulation, Regulation X (24 C.F.R. Part 3500), as they might be amended from time to time, or any additional or successor legislation or regulation that governs the same subject matter. As used in this security instrument, "RESPA" refers

11-11-05 MTG                                                                                                    NJ001102

*N2A1E421CA82M19P800U3011620**NI1X16WICZ*        K        ORIGINAL

MB 1 1 336 PG 846

-3-

to all requirements and restrictions that are imposed in regard to a "federally related mortgage loan" even if the loan does not qualify as a "federally related mortgage loan" under RESPA. Lender shall estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items or otherwise in accordance with Applicable Law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is an institution whose deposits are so insured) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items no later than the time specified under RESPA. Lender shall not charge Borrower for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays Borrower interest on the Funds and Applicable Law permits Lender to make such a charge. Unless an agreement is made in writing or Applicable Law requires interest to be paid on the Funds, Lender shall not be required to pay Borrower any interest or earnings on the Funds. Borrower and Lender can agree in writing, however, that interest shall be paid on the Funds. Lender shall give to Borrower, without charge, an annual accounting of the Funds as required by RESPA.

If there is a surplus of Funds held in escrow, as defined under RESPA, Lender shall account to Borrower for the excess funds in accordance with RESPA. If there is a shortage of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the shortage in accordance with RESPA, but in no more than 12 monthly payments. If there is a deficiency of Funds held in escrow, as defined under RESPA, Lender shall notify Borrower as required by RESPA, and Borrower shall pay to Lender the amount necessary to make up the deficiency in accordance with RESPA, but in no more than 12 monthly payments.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to Borrower any Funds held by Lender.

4. **Prior Mortgages and Deeds of Trust; Charges; Liens.** Borrower shall perform all of Borrower's obligations under any mortgage, deed of trust or other security agreement with a lien which has priority over this Mortgage, including Borrower's covenants to make payments when due. Borrower shall pay or cause to be paid all taxes, assessments and other charges, fines and impositions attributable to the Property which may attain a priority over this Mortgage, and leasehold payments or ground rents, if any.

5. **Hazard Insurance.** Borrower shall keep the improvements now existing or hereafter erected on the Property insured against loss by fire, hazards included within the term "extended coverage", and such other hazards as Lender may require and in such amounts and for such periods as Lender may require.

The insurance carrier providing the insurance shall be chosen by the Borrower subject to approval by Lender; provided, that such approval shall not be unreasonably withheld. All insurance policies and renewals thereof shall be in a form acceptable to Lender and shall include a standard mortgage clause in favor of and in a form acceptable to Lender. Lender shall have the right to hold the policies and renewals thereof, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Mortgage.

In the event of loss, Borrower shall give prompt notice to the insurance carrier and Lender. Lender may make proof of loss if not made promptly by Borrower.

If the Property is abandoned by Borrower, or if Borrower fails to respond to Lender within 30 days from the date notice is mailed by Lender to Borrower that the insurance carrier offers to settle a claim for insurance benefits, Lender is authorized to collect and apply the insurance proceeds at Lender's option either to restoration or repair of the Property or to the sums secured by this Mortgage.

6. **Preservation and Maintenance of Property; Leaseholds; Condominiums; Planned Unit Developments.** Borrower shall keep the Property in good repair and shall not commit waste or permit impairment or deterioration of the Property and shall comply with the provisions of any lease if this Mortgage is on a leasehold. If this Mortgage is on a unit in a condominium or a planned unit development, Borrower shall perform all of Borrower's obligations under the declaration or covenants creating or governing the condominium or planned unit development, the by-laws and regulations of the condominium or planned unit development, and constituent documents.

7. **Protection of Lender's Security.** If Borrower fails to perform the covenants and agreements contained in this Mortgage, or if any action or proceeding is commenced which materially affects Lender's interest in the Property, then Lender, at Lender's option, upon notice to Borrower, may make such appearances, disburse such sums, including reasonable attorneys' fees, and take such action as is necessary to protect Lender's interest. If Lender required mortgage insurance as a condition of making the loan secured by this Mortgage, Borrower shall pay the premiums required to maintain such insurance in effect until such time as the requirement for such insurance terminates in accordance with Borrower's and Lender's written agreement or applicable law.

Any amounts disbursed by Lender pursuant to this paragraph 7, with interest thereon at the applicable contract rate, shall become additional indebtedness of Borrower secured by this Mortgage. Unless Borrower and Lender agree to other terms of payment, such amounts shall be payable upon notice from Lender to Borrower requesting payment thereof. Nothing contained in this paragraph 7 shall require Lender to incur any expense or take any action hereunder.

8. **Inspection.** Lender may make or cause to be made reasonable entries upon and inspections of the Property, provided that Lender shall give Borrower notice prior to any such inspection specifying reasonable cause therefore related to Lender's interest in the Property.

9. **Condemnation.** The proceeds of any award or claim for damages, direct or consequential, in connection with any condemnation or other taking of the Property, or part thereof, or for conveyance in lieu of condemnation, are hereby assigned and shall be paid to Lender, subject to the terms of any mortgage, deed of trust or other security agreement with a lien which has priority over this Mortgage.

10. **Borrower Not Released; Forbearance By Lender Not a Waiver.** Extension of the time for payment or modification of amortization of the sums secured by this Mortgage granted by Lender to any successor in interest of Borrower and all other parties who are or hereafter become secondarily liable shall not operate to release, in any manner, the liability of the original Borrower and Borrower's successors in interest. Lender shall not be required to commence proceedings against such successor or refuse to extend time for payment or otherwise modify amortization of the sums secured by this Mortgage by reason of any demand made by the original Borrower and Borrower's successors in interest. Any forbearance by Lender in exercising any right or remedy hereunder, or otherwise afforded by applicable law, shall not be a waiver of or preclude the exercise of any such right or remedy.

-4-

11. Successors and Assigns Bound; Joint and Several Liability; Co-signers. The covenants and agreements herein contained shall bind, and the rights hereunder shall inure to, the respective successors and assigns of Lender and Borrower, subject to the provisions of paragraph 16 hereof. All covenants and agreements of Borrower shall be joint and several. Any Borrower who co-signs this Mortgage, but does not execute the Note, (a) is co-signing this Mortgage only to mortgage, grant and convey that Borrower's interest in the Property to Lender under the terms of this Mortgage, (b) is not personally liable on the Note or under this Mortgage, and (c) agrees that Lender and any other Borrower hereunder may agree to extend, modify, forbear, or make any other accommodations with regard to the terms of this Mortgage or the Note without that Borrower's consent and without releasing that Borrower or modifying this Mortgage as to that Borrower's interest in the Property.

12. Notice. Except for any notice required under applicable law to be given in another manner, (a) any notice to Borrower provided for in this Mortgage shall be given by delivering it or by mailing such notice by certified mail addressed to Borrower at the Property address or at such other address as Borrower may designate by notice to Lender as provided herein, and (b) any notice to Lender shall be given by certified mail to Lender's address stated herein or to such other address as Lender may designate by notice to Borrower as provided herein. Any notice provided for in this Mortgage shall be deemed to have been given to Borrower or Lender when given in the manner designated herein.

13. Governing Law; Severability. The applicable law contained in the Note shall control. Where no applicable law is contained therein, the state and local laws of the jurisdiction in which the Property is located shall apply except where such laws conflict with Federal law, in which case, Federal law applies. In the event that any provision or clause of this Mortgage or the Note conflicts with applicable law, such conflict shall not affect other provisions of this Mortgage or the Note which can be given effect without the conflicting provision, and to this end the provisions of this Mortgage and the Note are declared to be severable. As used herein, "costs", "expenses" and "attorneys' fees" include all sums to the extent not prohibited by applicable law or limited herein.

14. Borrower's Copy. Borrower shall be furnished a conformed copy of the Note and of this Mortgage, if requested, at the time of execution or after recordation hereof.

15. Rehabilitation Loan Agreement. Borrower shall fulfill all of Borrower's obligations under any home rehabilitation, improvement, repair, or other loan agreement which Borrower enters into with Lender. Lender, at Lender's option, may require Borrower to execute and deliver to Lender, in a form acceptable to Lender, an assignment of any rights, claims or defenses which Borrower may have against parties who supply labor, materials or services in connection with improvements made to the Property.

16. Transfer of the Property. If Borrower sells or transfers all or any part of the Property or an interest therein, excluding (a) the creation of a lien or encumbrance subordinate to this Mortgage, (b) a transfer by devise, descent, or by operation of law upon the death of a joint tenant, (c) the grant of any leasehold interest of three years or less not containing an option to purchase, (d) the creation of a purchase money security interest for household appliances, (e) a transfer to a relative resulting from the death of a Borrower, (f) a transfer where the spouse or children of the Borrower become an owner of the property, (g) a transfer resulting from a decree of dissolution of marriage, legal separation agreement, or from an incidental property settlement agreement, by which the spouse of the Borrower becomes an owner of the property, (h) a transfer into an inter vivos trust in which the Borrower is and remains a beneficiary and which does not relate to a transfer of rights of occupancy in the property, or (i) any other transfer or disposition described in regulations prescribed by the Federal Home Loan Bank Board, Borrower shall cause to be submitted information required by Lender to evaluate the transferee as if a new loan were being made to the transferee. Borrower will continue to be obligated under the Note and this Mortgage unless Lender releases Borrower in writing.

If Lender does not agree to such sale or transfer, Lender may declare all of the sums secured by this Mortgage to be immediately due and payable. If Lender exercises such option to accelerate, Lender shall mail Borrower notice of acceleration in accordance with paragraph 12 hereof. Such notice shall provide a period of not less than 30 days from the date the notice is mailed or delivered within which Borrower may pay the sums declared due. If Borrower fails to pay such sums prior to the expiration of such period, Lender may, without further notice or demand on Borrower, invoke any remedies permitted by paragraph 17 hereof.

NON-UNIFORM COVENANTS. Borrower and Lender further covenant and agree as follows:

17. Acceleration; Remedies. Except as provided in paragraph 16 hereof, or otherwise required by law, upon Borrower's breach of any covenant or agreement of Borrower in this Mortgage, including the covenants to pay when due any sums secured by this Mortgage, Lender prior to acceleration shall give notice to Borrower as provided in paragraph 12 hereof specifying: (1) the breach; (2) the action required to cure such breach; (3) a date, not less than 10 days from the date the notice is mailed to Borrower, by which such breach must be cured; and (4) that failure to cure such breach on or before the date specified in the notice may result in acceleration of the sums secured by this Mortgage, foreclosure by judicial proceeding, and sale of the Property. The notice shall further inform Borrower of the right to reinstate after acceleration and the right to assert in the foreclosure proceeding the nonexistence of a default or any other defense of Borrower to acceleration and foreclosure. If the breach is not cured on or before the date specified in the notice, Lender, at Lender's option, may declare all of the sums secured by this Mortgage to be immediately due and payable without further demand and may foreclose this Mortgage by judicial proceeding. Lender shall be entitled to collect in such proceeding all expenses of foreclosure, including, but not limited to, attorneys' fees permitted by Rules of Court, and costs of abstracts and title reports and documentary evidence.

18. Borrower's Right to Reinstate. Notwithstanding Lender's acceleration of the sums secured by this Mortgage due to Borrower's breach, Borrower shall have the right to have any proceedings begun by Lender to enforce this Mortgage discontinued at any time prior to entry of a judgment enforcing this Mortgage if: (a) Borrower pays Lender all sums which would be then due under this Mortgage and the Note had no acceleration occurred; (b) Borrower cures all breaches of any other covenants or agreements of Borrower contained in this Mortgage; (c) Borrower pays all reasonable expenses incurred by Lender in enforcing the covenants and agreements of Borrower contained in this Mortgage, and in enforcing Lender's remedies as provided in paragraph 17 hereof, including, but not limited to, reasonable attorney's fees; and (d) Borrower takes such action as Lender may

11-11-05 MTG                                                                 NJ001104



*N3A1E42TCAS2M10B00MJ0011040**N1TE19N1EZ*        ORIGINAL

MB 11336 PG 848

-5-

reasonably require to assure that the lien of this Mortgage, Lender's interest in the Property and Borrower's obligation to pay the sums secured by this Mortgage shall continue unimpaired. Upon such payment and cure by Borrower, this Mortgage and the obligations secured hereby shall remain in full force and effect as if no acceleration had occurred.

19. Assignment of Rents; Appointment of Receiver. As additional security hereunder, Borrower hereby assigns to Lender the rents of the Property, provided that Borrower shall, prior to acceleration under paragraph 17 hereof or abandonment of the Property, have the right to collect and retain such rents as they become due and payable.

Upon acceleration under paragraph 17 hereof or abandonment of the Property, Lender, in person, by agent or by judicially appointed receiver, shall be entitled to enter upon, take possession of and manage the Property and to collect the rents of the Property including those past due. All rents collected by Lender or the receiver shall be applied first to payment of the costs of management of the Property and collection of rents, including, but not limited to, receiver's fees, premiums on receiver's bonds and reasonable attorneys' fees, and then to the sums secured by this Mortgage. Lender and the receiver shall be liable to account only for those rents actually received.

20. Release. Upon payment of all sums secured by this Mortgage and, in the case of a Revolving Loan Agreement, Borrower requests Lender to release this Mortgage, Lender shall cancel this Mortgage without charge to Borrower. Borrower shall pay all costs of recordation, if any.

21. No Claim of Credit for Taxes. Borrower will not make or claim credit on or deduction from the principal or interest on the sums secured by this Mortgage by reason of any municipal or governmental taxes, assessments or charges assessed upon the Property, nor claim any deduction from the taxable value of the Property by reason of this Mortgage.

22. Arbitration Rider to Note. The Arbitration Rider attached to and made a part of the Note is hereby incorporated by reference and made a part of this Mortgage.

(THIS SPACE INTENTIONALLY LEFT BLANK)

11-11-06 MTG                                                                                                      NJ001105



*NJ0A16421CA82MTG8008NJ00110S0**NJ1K16WICZ           *                          ORIGINAL

HB 1 1 336 PG 849

-6-

## REQUEST FOR NOTICE OF DEFAULT
### AND FORECLOSURE UNDER SUPERIOR
### MORTGAGES OR DEEDS OF TRUST

Borrower and Lender request the holder of any mortgage, deed of trust or other encumbrance with a lien which has priority over this Mortgage to give notice to Lender, at Lender's address set forth on page one of this Mortgage, of any default under the superior encumbrance and of any sale or other foreclosure action.

_____ (SEAL)
THADDEUS R NITKIEWICZ         -Borrower

_____ (SEAL)
CHRISTIANA C NITKIEWICZ        -Borrower

STATE OF NEW JERSEY, _Burlington_ _____ County ss:

On this _23rd_ day of _February_, 20 _09_, before me, the subscriber, personally appeared _Thaddeus R Nitkiewicz & Christiana C Nitkiewicz_, _husband & wife_ who, I am satisfied, _are_ the person(s) named in and who executed the within instrument, and thereupon _s_ acknowledge that _they_ signed, sealed and delivered the same as _their_ act and deed, for the purposes therein expressed.

_____
Notary Public

CHARLES W. WIGGINTON
ATTORNEY AT LAW
STATE OF NEW JERSEY

Receipt of a true copy of this instrument, provided without charge, is hereby acknowledged.

_____ (SEAL)
THADDEUS R NITKIEWICZ         -Borrower

_____ (SEAL)
CHRISTIANA C NITKIEWICZ        -Borrower

STATE OF NEW JERSEY, _____ County ss:

On this _____ day of _____, 20 _____, before me, the subscriber, personally appeared _____ who, I am satisfied, _____ the person(s) named in and who executed the within instrument, and thereupon _____ acknowledge that _____ signed, sealed and delivered the same as _____ act and deed, for the purposes therein expressed.

_____
Notary Public

Receipt of a true copy of this instrument, provided without charge, is hereby acknowledged.

_____ (SEAL)
-Borrower

_____ (SEAL)
-Borrower

_____ (Space Below This Line Reserved For Lender and Recorder) _____

Return To:
Records Processing Services
577 Lamont Road
Elmhurst, IL 60126

11-11-05 MTG                                                          NJ001106

*NJA1E42TCAE2MT380008NJ00110850**NITKIEWICZ     *     ORIGINAL

MB I I 336 PG 850

# RECORDING DATA PAGE

```
Consideration :
Code          :
Transfer Fee  :
Recording Date: 03/05/2007
Document No   : 4419681    ccscelza

HSBC
PO BOX 8626
ELMHURST, IL  60126


Receipt No    : 692028
Document No   : 4419681
Document Type : MTG
Recording Date: 03/05/2007
Login Id      : ccscelza

      Recorded
  Mar 05 2007 04:21pm
Burlington County Clerk
```

**Clerk of Burlington County • 49 Rancocas Rd. • Mt. Holly, NJ 08060**
**609-265-5180**

MB 11336 PG 851

## SECONDARY MORTGAGE LOAN
## LOAN AGREEMENT
### Including Truth-in-Lending Disclosure

| | |
|---|---|
| **Lender: (Called "We", "Us", "Our")**<br>HOUSEHOLD FINANCE CORPORATION III<br>1045 NIXON DRIVE<br>MOUNT LAUREL, NJ 08054 | |
| **Borrowers: (Called "You", "Your")**<br>CHRISTIANA C. NITKIEWICZ<br>THADDEUS R. NITKIEWICZ<br>29 VINCENT DR<br>BURLINGTON, NJ 08016 | |
| **Date of Loan:** 02/23/2007 | **Loan Number:** |

In this agreement, "you", "your" mean the Borrower(s) who signs this agreement. "We", "us" and "our" refer to the Lender. This agreement covers the terms and conditions of your loan. It is important to us that you clearly understand the features of your loan. Please read this agreement carefully, and ask us any questions you may have.

### Truth-in-Lending Disclosure

| ANNUAL PERCENTAGE RATE<br><br>The cost of your credit as a yearly rate. | FINANCE CHARGE<br><br>The dollar amount the credit will cost you. | Amount Financed<br><br>The amount of credit provided to you or on your behalf. | Total of Payments<br><br>The amount you will have paid after you have made all payments as scheduled. |
|---|---|---|---|
| 12.228% | $251,735.31 ("e") | $90,999.09 | $342,734.40 ("e") |

Your payment schedule will be:

| Number of Payments | Amount of Payments | When Payments are Due ("e") | |
|---|---|---|---|
| 1 | $952.04 | 03/23/2007 | |
| 359 | $952.04 | Day 23 of each month thereafter. | |

"e" means an estimate

02/23/2007 19:19        Page 1 of 6        0315LE09



* N3A1E427CA - 82 - CET - 8 - 000 - 0315LE - Z - 1 - O ** NITKIEWICZ ^ ORIGINAL

**Assumption:** Someone buying your home cannot assume the remainder of the mortgage on the original terms.

**YOU ARE GIVING US A SECURITY INTEREST IN THE REAL PROPERTY AS DESCRIBED IN THE MORTGAGE AND LOCATED AT:**

29 VINCENT DR
BURLINGTON, NJ 08016

| | |
|---|---|
| Late Charge | If your monthly installment is not paid in full within 15 day(s) after it is due, you will be charged a late charge equal to 5% of the unpaid amount of the monthly installment. |
| Prepayment | You may prepay your loan in full or in part at any time without penalty. If you pay off your loan early, you will not be entitled to a refund of that part of the Finance Charge consisting of any prepaid finance charges. |

See your contract documents for any additional information about nonpayment, default, any required repayment in full before the scheduled date, and prepayment refunds and penalties.

The Settlement Statement provides your disbursements and the itemization of the Amount Financed.

## ABOUT THE SECURITY:

| | |
|---|---|
| Your Obligation to insure | You shall keep the structures located on the real property securing your loan insured against damage caused by fire and other physical hazards, name us as a loss payee and deliver to us a loss payable endorsement. If insurance covering the real property is canceled or expires while your loan is outstanding and you do not reinstate the coverage, we may obtain, at our option, hazard insurance coverage protecting our interest in the real property as outlined below. |
| Real Property Taxes and Homeowners Insurance | Homeowners Insurance covering fire and other hazards on the real property security is required, naming us as a loss payee for the term of your loan. You shall pay us on the day that monthly installments are due under this agreement, an additional sum (the "Funds") to be used to provide for payment of amounts due for: (a) taxes and assessments and other items which can attain priority over the Mortgage as a lien or encumbrance on the real property; (b) leasehold payments or ground rents on the real property, if any; (c) premiums for any and all insurance required by us under this agreement and the Mortgage ("Escrow Items"). You will pay us the Funds for Escrow Items unless we waive your obligation to pay the Funds for any or all Escrow Items. We may waive your obligation to pay us Funds for any or all Escrow Items at any time. Any such waiver must be in writing. In the event of such waiver, you will be solely responsible for paying the amounts due for any Escrow Items directly and, if we require, you shall furnish us with receipts |

02/23/2007 19:19                Page 2 of 6                0315LE09



* N3A1E427CA - 82 - CET - 8 - 000 - 0315LE - Z - 2 - O ** NITKIEWICZ ^ ORIGINAL

evidencing such payment within such time period as we may reasonably require.

**Title Insurance**

Title insurance on the real property security is required, naming us as a loss payee. You must purchase title insurance or its local equivalent protecting our lien on the real property as a condition to obtaining your loan. You may purchase title insurance from any title insurance provider you choose that we reasonably believe provides sufficient financial protection to us. You request such title insurance and authorize us to deduct the costs of the title insurance from your loan proceeds in order to pay the title insurance provider.

**Lender's Right to Place Hazard Insurance**

You authorize us, at our option, to obtain hazard insurance coverage on the real property in an amount not greater than the outstanding balance of principal and interest on your loan or, if known to be less, the replacement value of the real property, in the event that you fail to maintain the required hazard insurance outlined above or fail to provide adequate proof of its existence. You authorize us to charge you for the costs of this insurance. We may choose to add the insurance charges to the unpaid balance of your loan, which will accrue interest at the Contract Rate, or bill you for the annual premium on a periodic basis. The addition of the insurance charges due might increase the amount of your final monthly installment. The cost of lender-placed hazard insurance might be higher than the cost of standard insurance protecting the real property. The lender-placed insurance will not insure the contents of the real property or provide liability coverage. The insurance might not be the lowest cost coverage of its type available and you agree that we have no obligation to obtain the lowest cost coverage. We or an affiliated company might receive some benefit from the placement of this insurance and you will be charged for the full cost of the premium without reduction for any such benefit. If at any time after we have obtained this insurance, you provide adequate proof that you have subsequently purchased the required coverage, we will cancel the coverage we obtained and credit any unearned premiums to your loan.

---

### ABOUT YOUR LOAN REPAYMENT:

| | | | |
|---|---|---|---|
| SCHEDULED MATURITY DATE | 02/23/2037 | PREPAID FINANCE CHARGES | $595.91 |
| MONTHS OF CONTRACT | 360 | PRINCIPAL | $91,595.00 |
| CONTRACT RATE (per year) | 12.140% | JOINT CREDIT LIFE | $67.50 |
| AMOUNT FINANCED | $90,999.09 | | |



* N3A1E427CA - 82 - CET - 8 - 000 - 0315LE - Z - 3 - O ** NITKIEWICZ ^ ORIGINAL

**Promise to Pay**

You agree to the terms of this agreement and promise to pay us the principal (Amount Financed plus prepaid finance charges consisting of Origination Fee/Points) plus interest which is computed at a rate of 12.140% (the "Contract Rate"). You agree to pay us in monthly installments as stated in the Payments provision of this agreement. You also agree to pay us: (a) other charges as provided in this agreement; (b) credit insurance charges, if any; (c) collection costs permitted by applicable law, including reasonable attorneys' fees otherwise due under your Mortgage and (d) any other charges reflected in your settlement statement.

**Interest**

Interest will be charged on the unpaid principal until the full amount of principal has been paid. You will pay us interest at a yearly Contract Rate of 12.140%.

The interest rate required by this provision is the rate you will pay both before and after any default as described in this agreement.

**Payments**

Time and Place of Payments

You will pay us principal and interest by paying your monthly installments.

You will make your monthly installments to us on the same day of each month beginning on or about 03/23/2007. You will make these monthly installments every month until you have paid all of the principal and interest and any other charges described herein that you may owe under this agreement. Your monthly installments will be applied to interest before principal. If, on the Scheduled Maturity Date, 02/23/2037, you still owe amounts under this agreement, you will pay those amounts in full on that date, which amount will include interest at the then current Contract Rate or any such other rate as required by law.

You will make your monthly installments at the address shown on page one or at the address shown on your monthly billing statement or at a different place that we may give you.

Amount of Monthly Installments

Your monthly installments will be in the amount of $952.04, plus the amount of any optional insurance or funds for escrow you elected.

**Prepayment**

You may prepay your loan in full or in part at any time without penalty. If you pay off your loan early, you will not be entitled to a refund of that part of the Finance Charge consisting of any prepaid finance charges.

**Late Charge**

If your monthly installment is not paid in full within 15 day(s) after it is due, you will be charged a late charge equal to 5% of the unpaid amount of the monthly installment.

02/23/2007 19:19                    Page 4 of 6                    0315LE09



* N3A1E427CA - 82 - CET - 8 - 000 - 0315LE - Z - 4 - O ** NITKIEWICZ ^ ORIGINAL

| | |
|---|---|
| **Bad Check Charge** | You agree to pay $20.00 each time any check or payment is made on your loan by any means, including but not limited to, a check or ACH (our Authorization to Debit Account), which is returned unpaid by your bank or other financial institution for any reason. |
| **Additional Charges** | You agree to pay any amounts actually incurred by us for services rendered in connection with the opening and servicing of your loan, as allowed by law. These amounts may include fees for appraisals, title examination, title insurance or its local equivalent, fees and taxes paid to public officials in connection with recording, releasing or satisfying the Mortgage and other taxes as shown in the Settlement Statement incorporated herein by this reference. You also agree to pay any other amounts incurred by us in connection with the servicing of your loan including any amounts that we may (but need not) pay or that are otherwise due under the Mortgage, incorporated herein by this reference. |
| **Default** | If you fail to make any monthly installment after it becomes due or fail to comply with the terms of the Mortgage, we may require that you pay us, at once and without prior notice or demand, the unpaid balance of your loan plus accrued interest and any applicable charges in this agreement as authorized. |
| **Security Interest** | You agree to give us a security interest in the real property as described in the Mortgage. |

### ABOUT OUR RELATIONSHIP:

| | |
|---|---|
| **Exchange of Information** | You understand and agree that we will call you from time to time to discuss your financial needs and any loan products that may be of interest to you as may be permitted by applicable law. For more information regarding our privacy practices, please refer to our Privacy Statement, which is included with your loan documents. You agree that the Department of Motor Vehicles (or your state's equivalent of such department) may release your residence address to us, should it become necessary to locate you. |
| **Credit Bureau Reporting** | If you fail to fulfill the terms of your loan, a negative report reflecting on your credit record may be submitted to a Credit Reporting Agency. |
| **Telephone Monitoring** | You agree that we may listen to and/or record telephone calls between you and our representatives for quality assurance purposes. |
| **Insurance** | Credit insurance is optional. Any applicable insurance disclosures are included with this agreement and are incorporated herein by this reference. |



* N3A1E427CA - 82 - CET - 8 - 000 - 0315LE - Z - 5 - O ** NITKIEWICZ ^ ORIGINAL

**NOTICE TO THE BORROWER**

**YOU MAY BE REQUIRED TO PURCHASE PROPERTY INSURANCE AS A CONDITION OF RECEIVING THE LOAN. IF PROPERTY INSURANCE IS REQUIRED, YOU MAY SECURE INSURANCE FROM A COMPANY OR AGENT OF YOUR OWN CHOOSING.**

| | |
|---|---|
| Alternative Dispute Resolution | The terms of the Arbitration Rider signed by you as part of your loan transaction are incorporated herein by this reference. |
| Applicable Law | The terms and conditions of this agreement will be governed by the New Jersey Licensed Lenders Act, Title 17, Chapter 11C, New Jersey Statutes Annotated. |

If any provision of this agreement is finally determined to be void or unenforceable under any law, rule, or regulation, all other provisions of this agreement will remain valid and enforceable. Our failure to enforce any provision(s) to this agreement shall not be deemed to constitute a waiver of such term(s). In order for any amendment to this agreement to be valid, it must be agreed to by you and us.

**You acknowledge that before signing this agreement, you have read and received this agreement which includes the Federal Truth-in-Lending disclosure and, as applicable, any other riders and/or disclosures incorporated herein by reference. By signing below, you agree to observe the terms and conditions of this agreement.**

**NOTICE TO BORROWER**

**Read this promissory note or loan agreement before you sign. Do not sign this promissory note or loan agreement if it contains blank spaces. The promissory note or loan agreement is secured by a secondary mortgage on your real property.**

Borrower: _____   Date: 2/23/07
CHRISTIANA C. NITKIEWICZ

Borrower: _____   Date: 2/23/07
THADDEUS R. NITKIEWICZ

Witness: _____

CHARLES W. WIGGINTON
ATTORNEY AT LAW
STATE OF NEW JERSEY

* N3A1E427CA - 82 - CET - 6 - 000 - 0315LE - Z - 5 - O ** NITKIEWICZ ^ ORIGINAL

## Exhibit C

Page #

# APPRAISAL OF REAL PROPERTY

### LOCATED AT:
29 Vincent Dr
Block 140 03  Lot 9
Burlington, NJ 08016-3849

### FOR:
Nitkiewicz,Thaddeus,R&Christiana,C
29 Vincnet Dr
Burlington, NJ  08016

### AS OF:
4/20/2009

### BY:
Frank Tiringer SCRREA CRA
Decotah Services
69 Decotah Trail
Medford Lakes, NJ 08055
609 654 0098
decotah@verizon.net

Form GA3 — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

DECOTAH SERVICES
69 DECOTAH TRAIL
MEDFORD LAKES NJ 08055
609  654  0098


decotah@verizon.net


Nitkiewicz,Thaddeus,R&Christiana,C
29 Vincnet Dr
Burlington, NJ 08016


Re:  Property:    29 Vincent Dr
                  Burlington, NJ 08016-3849
     Borrower:
     File No.:     0080945


In accordance with your request, we have appraised the above referenced property.  The report of that appraisal is attached.

The purpose of this appraisal is to estimate the market value of the property described in this appraisal report, as improved, in unencumbered fee simple title of ownership.

This report is based on a physical analysis of the site and improvements, a locational analysis of the neighborhood and city, and an economic analysis of the market for properties such as the subject.  The appraisal was developed and the report was prepared in accordance with the Uniform Standards of Professional Appraisal Practice.

The value conclusions reported are as of the effective date stated in the body of the report and contingent upon the certification and limiting conditions attached.

It has been a pleasure to assist you.  Please do not hesitate to contact me or any of my staff if we can be of additional service to you.


Sincerely,


Frank Tiringer SCRREA CRA

## SUMMARY OF SALIENT FEATURES

| | | |
|---|---|---|
| **SUBJECT INFORMATION** | Subject Address | 29 Vincent Dr |
| | Legal Description | Block 140.03  Lot 9 |
| | City | Burlington |
| | County | Burlington |
| | State | NJ |
| | Zip Code | 08016-3849 |
| | Census Tract | 34005-7011.02-1 |
| | Map Reference | 15804 |
| **SALES PRICE** | Sale Price | $ NA |
| | Date of Sale | |
| **CLIENT** | Borrower | |
| | Lender/Client | Nitkiewicz,Thaddeus,R&Christiana,C |
| **DESCRIPTION OF IMPROVEMENTS** | Size (Square Feet) | 2,305 |
| | Price per Square Foot | $ |
| | Location | SUBURBAN |
| | Age | 14 |
| | Condition | AVERAGE |
| | Total Rooms | 9 |
| | Bedrooms | 4 |
| | Baths | 2.1 |
| **APPRAISER** | Appraiser | Frank Tiringer SCRREA CRA |
| | Date of Appraised Value | 4/20/2009 |
| **VALUE** | Opinion of Value | $ 290,652 |

Decotah Services

Page #4

## Uniform Residential Appraisal Report

File # 0080945

The purpose of this summary appraisal report is to provide the lender/client with an accurate, and adequately supported, opinion of the market value of the subject property.

| | |
|---|---|
| Property Address 29 Vincent Dr | City Burlington   State NJ   Zip Code 08016-3849 |
| Borrower Nitkiewicz,Thaddeus,R&Christiano,C | Owner of Public Record Nitkiewicz,Thaddeus,R&Christiano,C   County Burlington |
| Legal Description Block 140 02 Lot 9 | |
| Assessor's Parcel # 06-00140 03-00009 | Tax Year 2008   R.E. Taxes $ 8,421 |
| Neighborhood Name Park South | Map Reference 15804   Census Tract 34005-7011.02-1 |
| Occupant ☒ Owner ☐ Tenant ☐ Vacant | Special Assessments $ NONE   ☐ PUD   HOA $ ☐ per year ☐ per month |
| Property Rights Appraised ☒ Fee Simple ☐ Leasehold ☐ Other (describe) | |
| Assignment Type ☐ Purchase Transaction ☐ Refinance Transaction ☒ Other (describe) ESTABLISH COLLATERAL VALUE | |
| Lender/Client Nitkiewicz,Thaddeus,R&Christiano,C   Address 29 Vincent Dr, Burlington, NJ 08016 | |

Is the subject property currently offered for sale or has it been offered for sale in the twelve months prior to the effective date of this appraisal?   ☐ Yes ☒ No

Report data source(s) used, offering price(s), and date(s).   MLS, TAX RECORDS

☐ did ☐ did not analyze the contract for sale for the subject purchase transaction. Explain the results of the analysis of the contract for sale or why the analysis was not performed.

Contract Price $ NA   Date of Contract   Is the property seller the owner of public record? ☐ Yes ☐ No   Data Source(s)

Is there any financial assistance (loan charges, sale concessions, gift or downpayment assistance, etc.) to be paid by any party on behalf of the borrower?   ☐ Yes ☐ No
If Yes, report the total dollar amount and describe the items to be paid.

Note: Race and the racial composition of the neighborhood are not appraisal factors.

| Neighborhood Characteristics | One-Unit Housing Trends | One-Unit Housing | Present Land Use % |
|---|---|---|---|
| Location ☐ Urban ☒ Suburban ☐ Rural | Property Values ☐ Increasing ☐ Stable ☒ Declining | PRICE   AGE | One-Unit 80 % |
| Built-Up ☒ Over 75% ☐ 25-75% ☐ Under 25% | Demand/Supply ☐ Shortage ☒ In Balance ☐ Over Supply | $ (000)   (yrs) | 2-4 Unit 5 % |
| Growth ☐ Rapid ☒ Stable ☒ Slow | Marketing Time ☐ Under 3 mths ☒ 3-6 mths ☐ Over 6 mths | 200 Low 10 | Multi-Family 5 % |
| Neighborhood Boundaries   SEE MAP FOR DELINEATION | | 475 High 150 | Commercial 10 % |
| | | 450 Pred. 45 | Other % |

Neighborhood Description   Area is comprised of medium sized colonial structures on average sized lots with small front yards and average rear yards. Sidewalks, curbs, storm drains are averagely maintained. Dwellings in the area appear to be well maintained. Landscaping is both professionally and home owner maintained. Nothing detrimental to value was observed during the appraisers inspection.

Market Conditions (including support for the above conclusions)   See Statistics and Market Conditionns Addendum

| | | | |
|---|---|---|---|
| Dimensions  80x130 | Area 10,400 Sq.Ft. | Shape RECTANGULAR | View RESIDENTIAL |
| Specific Zoning Classification R1 | Zoning Description Residential | | |

Zoning Compliance ☒ Legal ☐ Legal Nonconforming (Grandfathered Use) ☐ No Zoning ☐ Illegal (describe)

Is the highest and best use of subject property as improved (or as proposed per plans and specifications) the present use?   ☒ Yes ☐ No   If No, describe

| Utilities | Public | Other (describe) | | Public | Other (describe) | Off-site Improvements - Type | Public | Private |
|---|---|---|---|---|---|---|---|---|
| Electricity | ☒ | | Water | ☒ | | Street MACADAM | ☒ | |
| Gas | ☒ | | Sanitary Sewer | ☒ | | Alley | | ☒ |

FEMA Special Flood Hazard Area ☐ Yes ☒ No   FEMA Flood Zone C   FEMA Map # 34009600064B   FEMA Map Date 2/17/1982

Are the utilities and off-site improvements typical for the market area?   ☒ Yes ☐ No   If No, describe

Are there any adverse site conditions or external factors (easements, encroachments, environmental conditions, land uses, etc.)?   ☐ Yes ☒ No   If Yes, describe

| General Description | Foundation | Exterior Description materials/condition | Interior materials/condition |
|---|---|---|---|
| Units ☒ One ☐ One with Accessory Unit | ☒ Concrete Slab ☐ Crawl Space | Foundation Walls CONCRETE SLAB/avg | Floors WOOD/CARPET/avg |
| # of Stories 2 | ☐ Full Basement ☐ Partial Basement | Exterior Walls vinyl/avg | Walls DRYWALL/Avg |
| Type ☒ Det. ☐ Att. ☐ S-Det/End Unit | Basement Area sq.ft. | Roof Surface SHNGLS/AVG | Trim/Finish PAINT/FLAT/Avg |
| ☒ Existing ☐ Proposed ☐ Under Const. | Basement Finish % | Gutters & Downspouts alum/avg | Bath Floor Ceramic Tile/Avg - |
| Design (Style) COLONIAL | ☐ Outside Entry/Exit ☐ Sump Pump | Window Type dble hung/avg | Bath Wainscot fiberglass/avg |
| Year Built 1995 | Evidence of ☐ Infestation | Storm Sash/Insulated insulated/avg | Car Storage ☐ None |
| Effective Age (Yrs) 12 | ☐ Dampness ☐ Settlement | Screens all/avg | ☒ Driveway # of Cars 2 |
| Attic ☐ None | Heating ☒ FWA ☐ HWBB ☐ Radiant | Amenities ☐ Woodstove(s) # | Driveway Surface Macadam |
| ☒ Drop Stair ☐ Stairs | ☐ Other Fuel GAS | ☒ Fireplace(s) # 1 ☒ Fence Rear | ☒ Garage # of Cars 2 |
| ☐ Floor ☐ Scuttle | Cooling ☒ Central Air Conditioning | ☒ Patio/Deck deck ☐ Porch | ☐ Carport # of Cars |
| ☐ Finished ☐ Heated | ☐ Individual ☐ Other | ☐ Pool abvg ☐ Other | ☐ Att. ☐ Det. ☒ Built-in |

Appliances ☒ Refrigerator ☒ Range/Oven ☒ Dishwasher ☒ Disposal ☒ Microwave ☒ Washer/Dryer ☐ Other (describe)

Finished area above grade contains:   9 Rooms   4 Bedrooms   2.1 Bath(s)   2,305 Square Feet of Gross Living Area Above Grade

Additional features (special energy efficient items, etc.).   NO ADDITIONAL FEATURES OR ENERGY EFFICIENT ITEMS NOTED AT TIME OF INSPECTION.

Describe the condition of the property (including needed repairs, deterioration, renovations, remodeling, etc.).   AFTER AN INTERIOR AND EXTERIOR INSPECTION THE APPRAISER FOUND THE SUBJECT TO BE IN AVERAGE CONDITION NEEDING NO UPDATING OR REPAIRS.

Are there any physical deficiencies or adverse conditions that affect the livability, soundness, or structural integrity of the property?   ☐ Yes ☒ No   If Yes, describe

Does the property generally conform to the neighborhood (functional utility, style, condition, use, construction, etc.)?   ☒ Yes ☐ No   If No, describe

| | | |
|---|---|---|
| Freddie Mac Form 70 March 2005 | Page 1 of 6 | Fannie Mae Form 1004 March 2005 |

## Uniform Residential Appraisal Report

File # 0080946

There are ___ comparable properties currently offered for sale in the subject neighborhood ranging in price from $ 300,000 to $ 325,000
There are ___ comparable sales in the subject neighborhood within the past twelve months ranging in sale price from $ 280,000 to $ 397,500

| FEATURE | SUBJECT | COMPARABLE SALE # 1 | | COMPARABLE SALE # 2 | | COMPARABLE SALE # 3 | |
|---|---|---|---|---|---|---|---|
| Address | 29 Vincent Dr<br>Burlington, NJ 08016 | 52 Vincent Dr<br>Burlington, NJ 08016 | | 6 Vincent Dr<br>Burlington, NJ 08016 | | 65 Mohr Dr<br>Burlington, NJ 08016 | |
| Proximity to Subject | | 0.07 miles SE | | 0.16 miles E | | 0.28 miles SE | |
| Sale Price | $ NA | | $ 280,000 | | $ 295,000 | | $ 369,000 |
| Sale Price/Gross Liv. Area | $ sq.ft | $ 114.75 sq.ft. | | $ 123.96 SQ.FT. | | $ 142.25 sq.ft | |
| Data Source(s) | | MLS TAX RECORDS | | MLS TAX RECORDS | | MLS TAX RECORDS | |
| Verification Source(s) | | MLS 5456657 | | MLS 5400126 | | MLS 5376176 | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment | DESCRIPTION | +(-) $ Adjustment |
| Sales or Financing Concessions | | CONVENTIONAL<br>NONE | | CONV/REO<br>SELLERS | -6,000 | F H A<br>NONE | |
| Date of Sale/Time | | 6/1/09  119 | | 01/29/2009  104 | | 03/19/2008  26 | |
| Location | SUBURBAN | SUBURBAN | | SUBURBAN | | SUBURBAN | |
| Leasehold/Fee Simple | Fee Simple | FEE SIMPLE | | FEE SIMPLE | | FEE SIMPLE | |
| Site | 10,400 Sq.Ft. | 5400 | +1,500 | 12150 | -1,500 | 7600 | +1,000 |
| View | RESIDENTIAL | RESIDENTIAL | | RESIDENTIAL | | RESIDENTIAL | |
| Design (Style) | COLONIAL | COLONIAL | | COLONIAL | | COLONIAL | |
| Quality of Construction | AVERAGE | AVERAGE | | AVERAGE | | AVERAGE | |
| Actual Age | 14 | 14 | | 9 | -1,000 | 8 | -1,000 |
| Condition | AVERAGE | AVERAGE | | AVERAGE | | AVERAGE + | |
| Above Grade | Total | Bdrms. | Baths | 8 | 4 | 2.1 | 8 | 4 | 2.1 | 10 | 4 | 2.1 | 10 | 4 | 2.1 |
| Room Count | 8 | 4 | 2.1 | | | | | | |
| Gross Living Area | 2,305 sq.ft. | 2,440 sq.ft. | -6,000 | 2,380 SQ.FT. | | 2,594 sq.ft. | -13,000 |
| Basement & Finished Rooms Below Grade | NONE | FULL/UNFIN<br>NONE | -10,500 | FULL/UNFIN<br>NONE | -10,500 | FULL/FIN<br>ONE | -10,500<br>-6,500 |
| Functional Utility | AVERAGE | AVERAGE | | AVERAGE | | AVERAGE | |
| Heating/Cooling | FHA/CAC | FHA/CAC | | FHA/CAC | | FHA/CAC | |
| Energy Efficient Items | STANDARD | STANDARD | | STANDARD | | STANDARD | |
| Garage/Carport | 2 | 2 CAR GARAGE | | 2 CAR GARAGE | | 2 CAR GAR | |
| Porch/Patio/Deck | deck | DECK | | PATIO | | DECK | |
| FIRE PLACE | 1 FIRE PLACE | NONE | +3,000 | 1 FIRE PLACE | | NONE | +3,000 |
| Net Adjustment (Total) | | □ + ☒ - | $ -12,000 | □ + ☒ - | $ -18,000 | □ + ☒ - | $ -26,000 |
| Adjusted Sale Price of Comparables | | Net Adj. 4.3 %<br>Gross Adj. 7.5 % | $ 268,000 | Net Adj. 6.1 %<br>Gross Adj. 6.1 % | $ 277,000 | Net Adj. 7.0 %<br>Gross Adj. 9.2 % | $ 343,000 |

☒ did ☐ did not research the sale or transfer history of the subject property and comparable sales. If not, explain

My research ☐ did ☒ did not reveal any prior sales or transfers of the subject property for the three years prior to the effective date of this appraisal.
Data Source(s) PUBLIC TAX RECORDS, MLS
My research ☐ did ☒ did not reveal any prior sales or transfers of the comparable sales for the year prior to the date of sale of the comparable sale.
Data Source(s) PUBLIC TAX RECORDS, MLS
Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | COMPARABLE SALE #1 | COMPARABLE SALE #2 | COMPARABLE SALE #3 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | NONE IN PRIOR 36 MONTHS | 1/4/2007 | 4/2/2006 | NONE IN PRIOR 12 MONTHS |
| Price of Prior Sale/Transfer | NONE | 430,000 | 421,900 | NONE |
| Data Source(s) | MLS, TAX RECORDS | MLS, TAX RECORDS | MLS TAX RECORDS | MLS TAX RECORDS |
| Effective Date of Data Source(s) | 4/11/09 | 4/11/09 | 4/11/09 | 4/11/09 |

Analysis of prior sale or transfer history of the subject property and comparable sales    AN EXTENSIVE SEARCH OF THE PUBLIC TAX RECORDS AND THE LOCAL MLS DID NOT REVEAL A SALES TRANSACTION, TRANSFER OF OWNERSHIP OR A LISTING OF THE PROPERTY IN THE PRIOR 36 MONTHS AS OF THE EFFECTIVE DATE OF THIS APPRAISAL. ALL COMPARABLES ARE WITHIN THE SUBJECTS IMMEDIATE MARKETING AREA AND ARE SIMILAR IN SIZE, FUNCTION, DESIGN, UTILITY AND AGE. ALL COMPARABLES ARE CLOSED SALES AND ARE NOT KNOWN TO HAVE BEEN SOLD WITHIN THE PRIOR 12 MONTHS AS OF THE EFFECTIVE DATE OF THIS APPRAISAL.

Summary of Sales Comparison Approach    ALL COMPARABLES ARE SIMILAR IN SIZE, FUNCTION, UTILITY, DESIGN, AGE AND ARE WITH IN THE IMMEDIATE MARKETING AREA OF THE SUBJECT. ROOM COUNT IS CONSIDERED IN THE GLA. FULL BATH ROOMS ARE ADJUSTED AT 4000, PART BATH ARE ADJUSTED AT 2000, GARAGES ARE ADJUSTED AT 4000 EACH. LOT SIZES ARE ROUND AND ADJUSTED AT 1.00 PER SQ.FT. COMPARABLES ARE IN SIMILAR CONDITION BUT NO INTERIOR INSPECTION WAS PERFORMED BY THE APPRAISER. ALL UTILITIES WERE ON AT THE TIME OF INSPECTION.

Indicated Value by Sales Comparison Approach $ 290,652
Indicated Value by: Sales Comparison Approach $ 290,652    Cost Approach (if developed) $ 308,612    Income Approach (if developed) $
RELIABLE & ADEQUATE SALES OF SIMILAR & COMPETING TYPE HOMES PROVIDED THE BEST ESTIMATE OF CURRENT VALUE. MOST WEIGHT GIVEN TO SALES COMPARISON APPROACH, THE INCOME APPROACH WAS CONSIDERED BUT DEEMED INSUFFICIENT DUE TO LACK OF RENTAL DATA AVAILABLE. NO PERSONAL ITEMS INCLUDED IN APPRAISED VALUE.
This appraisal is made ☒ "as is", ☐ subject to completion per plans and specifications on the basis of a hypothetical condition that the improvements have been completed, ☐ subject to the following repairs or alterations on the basis of a hypothetical condition that the repairs or alterations have been completed, or ☐ subject to the following required inspection based on the extraordinary assumption that the condition or deficiency does not require alteration or repair: APPRAISAL IS PERFORMED "AS IS" WITH NO EXTRAORDINARY ASSUMPTIONS.
Based on a complete visual inspection of the interior and exterior areas of the subject property, defined scope of work, statement of assumptions and limiting conditions, and appraiser's certification, my (our) opinion of the market value, as defined, of the real property that is the subject of this report is
$ 290,652 , as of 4/20/2009 , which is the date of inspection and the effective date of this appraisal.

Freddie Mac Form 70 March 2005                    Page 2 of 6                    Fannie Mae Form 1004 March 2005

Form 1004 — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

## Uniform Residential Appraisal Report
File # 0080945

**• URAR: Final Reconciliation**

THIS APPRAISAL REPORT IS A SUMMARY REPORT AS DEFINED BY THE APPRAISAL STANDARDS BOARD OF THE APPRAISAL FOUNDATION.

THE SALES COMPARISON APPROACH IS GIVEN THE GREATEST WEIGHT AS IT BEST REFLECTS THE ACTIONS OF BUYERS AND SELLERS IN THE MARKETPLACE. THE COST APPROACH IS MUTUALLY SUPPORTIVE. THERE HAVE BEEN FEW TRANSACTIONS OF COMPARABLE HOMES THAT WERE RENTED AT THE TIME OF SALE. IN THE SUBJECT'S AREA, THE TYPICAL SITUATION EXISTS WHERE SINGLE FAMILY DWELLINGS ARE UTILIZED AS PRIMARY RESIDENCES. THUS, DUE TO THE LACK OF SUFFICIENT AND RELIABLE DATA THE INCOME APPROACH WAS NOT UTILIZED WITHIN THIS REPORT.

NO PERSONAL PROPERTY WAS CONSIDERED WITHIN THIS REPORT.

IT IS ASSUMED WITHIN THIS REPORT THAT THERE WERE NO STRUCTURAL DEFECTS HIDDEN BY FLOOR OR WALL COVERINGS OR ANY HIDDEN OR UNAPPARENT CONDITIONS THAT WOULD HAVE AN IMPACT ON THE VALUE OR MARKETABILITY OF THE SUBJECT PROPERTY. THE APPRAISER DOES NOT PROFESS TO HAVE THE SKILL OR EXPERTISE NEEDED TO MAKE SUCH INSPECTIONS.

THE ANALYSIS, OPINIONS, AND CONCLUSIONS WERE DEVELOPED, AND THIS REPORT HAS BEEN PREPARED IN CONFORMITY WITH THE UNIFORM STANDARDS OF PROFESSIONAL APPRAISAL PRACTICE.

**• URAR: Photograph Certification**

THE PHOTOGRAPHS IN THIS REPORT ARE DIGITAL PHOTOS UTILIZING IMAGING TECHNOLOGY. THE APPRAISER HAS PERSONALLY INSPECTED AND PHOTOGRAPHED THE SUBJECT AND ALL COMPARABLES UTILIZED IN THIS REPORT; HOWEVER, SOME OF THE COMPARABLES MAY HAVE BEEN DOWNLOADED FROM AN ON-LINE PROVIDER, WHICH BETTER DEPICTS THE COMPARABLES AT THE TIME OF SALE. THE PHOTOGRAPHS USED IN THIS APPRAISAL ARE A TRUE AND CORRECT REPRESENTATION OF THE SUBJECT PROPERTY AND THE COMPARABLE SALES UTILIZED IN THIS REPORT. ALTHOUGH THE PHOTOGRAPHS MAY HAVE BEEN ENHANCED DURING THE FINISHING PROCESS, NO ALTERATIONS WERE MADE TO THE IMAGES WHICH WOULD MISREPRESENT THE APPEARANCE OF THE SUBJECT PROPERTY OR COMPARABLES.

Intended user, intended use   The INTENDED USER of this appraisal report is the LENDER/CLIENT. The INTENDED USE is to evaluate the property that is the subject of this appraisal for a mortgage finance transaction, subject to the state Scope of Work, purpose of the appraisal, reporting requirements of this appraisal report form, and Definition of Market Value. NO ADDITIONAL INTENDED USERS ARE IDENTIFIED BY THE APPRAISER

Appraiser's "Inventory Analysis," "Median Sale & List Price, DOM" and other observations in this addendum are based on the data source identified above, which appraiser generally believes to be an acceptable source of market data. However, the appraiser cannot verify all of the information in that data source and cannot guarantee the accuracy of such data or conclusions based thereon. The appraiser also cannot guarantee future market conditions affecting the subject property.

### COST APPROACH TO VALUE (not required by Fannie Mae)

Provide adequate information for the lender/client to replicate the below cost figures and calculations.
Support for the opinion of site value (summary of comparable land sales or other methods for estimating site value)   The site value is determined by the sales comparison/allocation method. The land to value ratio is typical for the area.

| ESTIMATED ☐ REPRODUCTION OR ☒ REPLACEMENT COST NEW | OPINION OF SITE VALUE | | =$ | 115,000 |
|---|---|---|---|---|
| Source of cost data  MARSHALL&SWIFT/LOCAL BUILDERS/APPRAISER | DWELLING | 2,305  Sq.Ft. @ $  98.00 | =$ | 225,890 |
| Quality rating from cost service  90+   Effective date of cost data  2/30/2009 | | Sq.Ft. @ $ | =$ | |
| Comments on Cost Approach (gross living area calculations, depreciation, etc.) | fire place, shed, deck | | =$ | 5,600 |
| Depreciation is calculated by dividing the effective age of the subject in to | Garage/Carport | 420  Sq.Ft. @ $  25.00 | =$ | 10,500 |
| the economic life span of 60 years. replacement cost of dwelling is arrived | Total Estimate of Cost-New | | =$ | 241,890 |
| at by multiplying the avg cost per sq ft by the gross living area of the | Less  Physical  Functional  External | | | |
| dwelling. All cost figures are obtained from Marshall & Swift cost guide | Depreciation  48,378 | | =$( | 48,378) |
| and the appraisers knowledge of the local area obtained from local | Depreciated Cost of Improvements | | =$ | 193,512 |
| contractors. | "As-is" Value of Site Improvements | | =$ | |
| Estimated Remaining Economic Life (HUD and VA only)  48 Years | INDICATED VALUE BY COST APPROACH | | =$ | 308,512 |

### INCOME APPROACH TO VALUE (not required by Fannie Mae)

| Estimated Monthly Market Rent $ | X  Gross Rent Multiplier | = $ | Indicated Value by Income Approach |
|---|---|---|---|

Summary of Income Approach (including support for market rent and GRM)

### PROJECT INFORMATION FOR PUDs (if applicable)

Is the developer/builder in control of the Homeowners' Association (HOA)?  ☐ Yes  ☐ No   Unit type(s)  ☐ Detached  ☐ Attached
Provide the following information for PUDs ONLY if the developer/builder is in control of the HOA and the subject property is an attached dwelling unit.
Legal Name of Project
Total number of phases  Total number of units  Total number of units sold
Total number of units rented  Total number of units for sale  Data source(s)
Was the project created by the conversion of existing building(s) into a PUD?  ☐ Yes  ☐ No  If Yes, date of conversion.
Does the project contain any multi-dwelling units?  ☐ Yes  ☐ No  Data Source
Are the units, common elements, and recreation facilities complete?  ☐ Yes  ☐ No  If No, describe the status of completion.

Are the common elements leased to or by the Homeowners' Association?  ☐ Yes  ☐ No  If Yes, describe the rental terms and options.

Describe common elements and recreational facilities.

Form 1004 — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

## Uniform Residential Appraisal Report
File # C080946

This report form is designed to report an appraisal of a one-unit property or a one-unit property with an accessory unit; including a unit in a planned unit development (PUD). This report form is not designed to report an appraisal of a manufactured home or a unit in a condominium or cooperative project.

This appraisal report is subject to the following scope of work, intended use, intended user, definition of market value, statement of assumptions and limiting conditions, and certifications. Modifications, additions, or deletions to the intended use, intended user, definition of market value, or assumptions and limiting conditions are not permitted. The appraiser may expand the scope of work to include any additional research or analysis necessary based on the complexity of this appraisal assignment. Modifications or deletions to the certifications are also not permitted. However, additional certifications that do not constitute material alterations to this appraisal report, such as those required by law or those related to the appraiser's continuing education or membership in an appraisal organization, are permitted.

**SCOPE OF WORK:** The scope of work for this appraisal is defined by the complexity of this appraisal assignment and the reporting requirements of this appraisal report form, including the following definition of market value, statement of assumptions and limiting conditions, and certifications. The appraiser must, at a minimum: (1) perform a complete visual inspection of the interior and exterior areas of the subject property, (2) inspect the neighborhood, (3) inspect each of the comparable sales from at least the street, (4) research, verify, and analyze data from reliable public and/or private sources, and (5) report his or her analysis, opinions, and conclusions in this appraisal report.

**INTENDED USE:** The intended use of this appraisal report is for the lender/client to evaluate the property that is the subject of this appraisal for a mortgage finance transaction.

**INTENDED USER:** The intended user of this appraisal report is the lender/client.

**DEFINITION OF MARKET VALUE:** The most probable price which a property should bring in a competitive and open market under all conditions requisite to a fair sale, the buyer and seller, each acting prudently, knowledgeably and assuming the price is not affected by undue stimulus. Implicit in this definition is the consummation of a sale as of a specified date and the passing of title from seller to buyer under conditions whereby: (1) buyer and seller are typically motivated; (2) both parties are well informed or well advised, and each acting in what he or she considers his or her own best interest; (3) a reasonable time is allowed for exposure in the open market; (4) payment is made in terms of cash in U. S. dollars or in terms of financial arrangements comparable thereto; and (5) the price represents the normal consideration for the property sold unaffected by special or creative financing or sales concessions* granted by anyone associated with the sale.

*Adjustments to the comparables must be made for special or creative financing or sales concessions. No adjustments are necessary for those costs which are normally paid by sellers as a result of tradition or law in a market area; these costs are readily identifiable since the seller pays these costs in virtually all sales transactions. Special or creative financing adjustments can be made to the comparable property by comparisons to financing terms offered by a third party institutional lender that is not already involved in the property or transaction. Any adjustment should not be calculated on a mechanical dollar for dollar cost of the financing or concession but the dollar amount of any adjustment should approximate the market's reaction to the financing or concessions based on the appraiser's judgment.

**STATEMENT OF ASSUMPTIONS AND LIMITING CONDITIONS:** The appraiser's certification in this report is subject to the following assumptions and limiting conditions:

1. The appraiser will not be responsible for matters of a legal nature that affect either the property being appraised or the title to it, except for information that he or she became aware of during the research involved in performing this appraisal. The appraiser assumes that the title is good and marketable and will not render any opinions about the title.

2. The appraiser has provided a sketch in this appraisal report to show the approximate dimensions of the improvements. The sketch is included only to assist the reader in visualizing the property and understanding the appraiser's determination of its size.

3. The appraiser has examined the available flood maps that are provided by the Federal Emergency Management Agency (or other data sources) and has noted in this appraisal report whether any portion of the subject site is located in an identified Special Flood Hazard Area. Because the appraiser is not a surveyor, he or she makes no guarantees, express or implied, regarding this determination.

4. The appraiser will not give testimony or appear in court because he or she made an appraisal of the property in question, unless specific arrangements to do so have been made beforehand, or as otherwise required by law.

5. The appraiser has noted in this appraisal report any adverse conditions (such as needed repairs, deterioration, the presence of hazardous wastes, toxic substances, etc.) observed during the inspection of the subject property or that he or she became aware of during the research involved in performing the appraisal. Unless otherwise stated in this appraisal report, the appraiser has no knowledge of any hidden or unapparent physical deficiencies or adverse conditions of the property (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) that would make the property less valuable, and has assumed that there are no such conditions and makes no guarantees or warranties, express or implied. The appraiser will not be responsible for any such conditions that do exist or for any engineering or testing that might be required to discover whether such conditions exist. Because the appraiser is not an expert in the field of environmental hazards, this appraisal report must not be considered as an environmental assessment of the property.

6. The appraiser has based his or her appraisal report and valuation conclusion for an appraisal that is subject to satisfactory completion, repairs, or alterations on the assumption that the completion, repairs, or alterations of the subject property will be performed in a professional manner.

## Uniform Residential Appraisal Report

File # 0080945

**APPRAISER'S CERTIFICATION:** The Appraiser certifies and agrees that:

1. I have, at a minimum, developed and reported this appraisal in accordance with the scope of work requirements stated in this appraisal report.

2. I performed a complete visual inspection of the interior and exterior areas of the subject property. I reported the condition of the improvements in factual, specific terms. I identified and reported the physical deficiencies that could affect the livability, soundness, or structural integrity of the property.

3. I performed this appraisal in accordance with the requirements of the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

4. I developed my opinion of the market value of the real property that is the subject of this report based on the sales comparison approach to value. I have adequate comparable market data to develop a reliable sales comparison approach for this appraisal assignment. I further certify that I considered the cost and income approaches to value but did not develop them, unless otherwise indicated in this report.

5. I researched, verified, analyzed, and reported on any current agreement for sale for the subject property, any offering for sale of the subject property in the twelve months prior to the effective date of this appraisal, and the prior sales of the subject property for a minimum of three years prior to the effective date of this appraisal, unless otherwise indicated in this report.

6. I researched, verified, analyzed, and reported on the prior sales of the comparable sales for a minimum of one year prior to the date of sale of the comparable sale, unless otherwise indicated in this report.

7. I selected and used comparable sales that are locationally, physically, and functionally the most similar to the subject property.

8. I have not used comparable sales that were the result of combining a land sale with the contract purchase price of a home that has been built or will be built on the land.

9. I have reported adjustments to the comparable sales that reflect the market's reaction to the differences between the subject property and the comparable sales.

10. I verified, from a disinterested source, all information in this report that was provided by parties who have a financial interest in the sale or financing of the subject property.

11. I have knowledge and experience in appraising this type of property in this market area.

12. I am aware of, and have access to, the necessary and appropriate public and private data sources, such as multiple listing services, tax assessment records, public land records and other such data sources for the area in which the property is located.

13. I obtained the information, estimates, and opinions furnished by other parties and expressed in this appraisal report from reliable sources that I believe to be true and correct.

14. I have taken into consideration the factors that have an impact on value with respect to the subject neighborhood, subject property, and the proximity of the subject property to adverse influences in the development of my opinion of market value. I have noted in this appraisal report any adverse conditions (such as, but not limited to, needed repairs, deterioration, the presence of hazardous wastes, toxic substances, adverse environmental conditions, etc.) observed during the inspection of the subject property or that I became aware of during the research involved in performing this appraisal. I have considered these adverse conditions in my analysis of the property value, and have reported on the effect of the conditions on the value and marketability of the subject property.

15. I have not knowingly withheld any significant information from this appraisal report and, to the best of my knowledge, all statements and information in this appraisal report are true and correct.

16. I stated in this appraisal report my own personal, unbiased, and professional analysis, opinions, and conclusions, which are subject only to the assumptions and limiting conditions in this appraisal report.

17. I have no present or prospective interest in the property that is the subject of this report, and I have no present or prospective personal interest or bias with respect to the participants in the transaction. I did not base, either partially or completely, my analysis and/or opinion of market value in this appraisal report on the race, color, religion, sex, age, marital status, handicap, familial status, or national origin of either the prospective owners or occupants of the subject property or of the present owners or occupants of the properties in the vicinity of the subject property or on any other basis prohibited by law.

18. My employment and/or compensation for performing this appraisal or any future or anticipated appraisals was not conditioned on any agreement or understanding, written or otherwise, that I would report (or present analysis supporting) a predetermined specific value, a predetermined minimum value, a range or direction in value, a value that favors the cause of any party, or the attainment of a specific result or occurrence of a specific subsequent event (such as approval of a pending mortgage loan application).

19. I personally prepared all conclusions and opinions about the real estate that were set forth in this appraisal report. If I relied on significant real property appraisal assistance from any individual or individuals in the performance of this appraisal or the preparation of this appraisal report, I have named such individual(s) and disclosed the specific tasks performed in this appraisal report. I certify that any individual so named is qualified to perform the tasks. I have not authorized anyone to make a change to any item in this appraisal report; therefore, any change made to this appraisal is unauthorized and I will take no responsibility for it.

20. I identified the lender/client in this appraisal report who is the individual, organization, or agent for the organization that ordered and will receive this appraisal report.

Page #9

## Uniform Residential Appraisal Report

File # 0080045

21. The lender/client may disclose or distribute this appraisal report to: the borrower; another lender at the request of the borrower; the mortgagee or its successors and assigns; mortgage insurers; government sponsored enterprises; other secondary market participants; data collection or reporting services; professional appraisal organizations; any department, agency, or instrumentality of the United States; and any state, the District of Columbia, or other jurisdictions; without having to obtain the appraiser's or supervisory appraiser's (if applicable) consent. Such consent must be obtained before this appraisal report may be disclosed or distributed to any other party (including, but not limited to, the public through advertising, public relations, news, sales, or other media).

22. I am aware that any disclosure or distribution of this appraisal report by me or the lender/client may be subject to certain laws and regulations. Further, I am also subject to the provisions of the Uniform Standards of Professional Appraisal Practice that pertain to disclosure or distribution by me.

23. The borrower, another lender at the request of the borrower, the mortgagee or its successors and assigns, mortgage insurers, government sponsored enterprises, and other secondary market participants may rely on this appraisal report as part of any mortgage finance transaction that involves any one or more of these parties.

24. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

25. Any intentional or negligent misrepresentation(s) contained in this appraisal report may result in civil liability and/or criminal penalties including, but not limited to, fine or imprisonment or both under the provisions of Title 18, United States Code, Section 1001, et seq., or similar state laws.

**SUPERVISORY APPRAISER'S CERTIFICATION:** The Supervisory Appraiser certifies and agrees that:

1. I directly supervised the appraiser for this appraisal assignment, have read the appraisal report, and agree with the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

2. I accept full responsibility for the contents of this appraisal report including, but not limited to, the appraiser's analysis, opinions, statements, conclusions, and the appraiser's certification.

3. The appraiser identified in this appraisal report is either a sub-contractor or an employee of the supervisory appraiser (or the appraisal firm), is qualified to perform this appraisal, and is acceptable to perform this appraisal under the applicable state law.

4. This appraisal report complies with the Uniform Standards of Professional Appraisal Practice that were adopted and promulgated by the Appraisal Standards Board of The Appraisal Foundation and that were in place at the time this appraisal report was prepared.

5. If this appraisal report was transmitted as an "electronic record" containing my "electronic signature," as those terms are defined in applicable federal and/or state laws (excluding audio and video recordings), or a facsimile transmission of this appraisal report containing a copy or representation of my signature, the appraisal report shall be as effective, enforceable and valid as if a paper version of this appraisal report were delivered containing my original hand written signature.

| APPRAISER | SUPERVISORY APPRAISER (ONLY IF REQUIRED) |
|---|---|
| Signature | Signature |
| Name  Frank Tiringer SCRREA GRA | Name |
| Company Name  Decotah Services | Company Name |
| Company Address  69 Decotah Trail, Medford Lakes, NJ 08055 | Company Address |
| Telephone Number  (609) 654-0098 | Telephone Number |
| Email Address  DECOTAH@VERIZON.NET | Email Address |
| Date of Signature and Report  April 23, 2009 | Date of Signature |
| Effective Date of Appraisal  4/20/2009 | State Certification # |
| State Certification #  42RC00195900 | or State License # |
| or State License # | State |
| or Other (describe) _____ State # | Expiration Date of Certification or License |
| State  NJ | |
| Expiration Date of Certification or License  12/31/2009 | SUBJECT PROPERTY |

ADDRESS OF PROPERTY APPRAISED
29 Vincent Dr.
Burlington, NJ 08016-3849
APPRAISED VALUE OF SUBJECT PROPERTY $    299,652
LENDER/CLIENT
Name  Nitkiewicz,Thaddeus,R&Christians,C
Company Name  Nitkiewicz,Thaddeus,R&Christians,C
Company Address  29 Vincent Dr, Burlington, NJ 08016

Email Address  badge332@comcast.net

SUBJECT PROPERTY
☐ Did not inspect subject property
☐ Did inspect exterior of subject property from street
    Date of Inspection _____
☐ Did inspect interior and exterior of subject property
    Date of Inspection _____

COMPARABLE SALES
☐ Did not inspect exterior of comparable sales from street
☐ Did inspect exterior of comparable sales from street
    Date of Inspection _____

## Additional Listings

File # 0080946

| FEATURE | SUBJECT | LISTING # 1 | | LISTING # 2 | | LISTING # 3 | |
|---|---|---|---|---|---|---|---|
| Address 29 Vincent Dr | | 63 Vincent Dr | | 21 Mohr Rd | | 22 Vincent Dr | |
| Burlington, NJ 08016 | | Burlington, NJ 08016 | | Burlington, NJ 08016 | | Burlington, NJ 08016 | |
| Proximity to Subject | | 0.15 miles SE | | 0.22 miles SE | | 0.05 miles E | |
| List Price | $ | | $ 300,000 | | $ 324,900 | | $ 325,000 |
| List Price/Gross Liv. Area | $        sq.ft. | $        sq.ft. | | $        sq.ft. | | $        sq.ft. | |
| Last Price Revision Date | | | | | | | |
| Data Source(s) | | | | | | | |
| Verification Source(s) | | | | | | | |
| VALUE ADJUSTMENTS | DESCRIPTION | DESCRIPTION | +(-) $ Adjust. | DESCRIPTION | +(-) $ Adjust. | DESCRIPTION | +(-) $ Adjust. |
| Sales or Financing | | | | | | | |
| Concessions | | | | | | | |
| Days on Market | | | | | | | |
| Location | SUBURBAN | | | | | | |
| Leasehold/Fee Simple | Fee Simple | | | | | | |
| Site | 10,400 Sq.Ft. | | | | | | |
| View | RESIDENTIAL | | | | | | |
| Design (Style) | COLONIAL | | | | | | |
| Quality of Construction | AVERAGE | | | | | | |
| Actual Age | 14 | | | | | | |
| Condition | AVERAGE | | | | | | |
| Above Grade | Total Bdrms. Baths | Total Bdrms. Baths | | Total Bdrms. Baths | | Total Bdrms. Baths | |
| Room Count | 9    4    2.1 | | | | | | |
| Gross Living Area | 2,306 sq.ft. | sq.ft. | | sq.ft. | | sq.ft. | |
| Basement & Finished | NONE | | | | | | |
| Rooms Below Grade | | | | | | | |
| Functional Utility | AVERAGE | | | | | | |
| Heating/Cooling | FHA/CAC | | | | | | |
| Energy Efficient Items | STANDARD | | | | | | |
| Garage/Carport | 2 | | | | | | |
| Porch/Patio/Deck | deck | | | | | | |
| | | | | | | | |
| | | | | | | | |
| Net Adjustment (Total) | | ☐ + ☐ - | $ | ☐ + ☐ - | $ | ☐ + ☐ - | $ |
| Adjusted List Price | | Net        % | | Net        % | | Net        % | |
| of Comparables | | Gross        % | $ 300,000 | Gross        % | $ 324,900 | Gross        % | $ 325,000 |

Report the results of the research and analysis of the prior sale or transfer history of the subject property and comparable sales (report additional prior sales on page 3).

| ITEM | SUBJECT | LISTING # 1 | LISTING # 2 | LISTING # 3 |
|---|---|---|---|---|
| Date of Prior Sale/Transfer | NONE IN PRIOR 36 MONTHS | | | |
| Price of Prior Sale/Transfer | NONE | | | |
| Data Source(s) | MLS, TAX RECORDS | | | |
| Effective Date of Data Source(s) | 4/11/09 | | | |

Comments:

Form 1004(AL) — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

Page # 11

### Listing Photo Page

| | |
|---|---|
| Borrower/Client | |
| Property Address | 29 Vincent Dr |
| City Burlington | County Burlington   State NJ   Zip Code 08016-3849 |
| Lender | Nitkiewicz,Thaddeus,R&Christiana,C |



**Listing 1**
63 Vincent Dr
Proximity to Subject  0.16 miles SE
List Price             300,000
Days on Market
Gross Living Area
Total Rooms
Total Bedrooms
Total Bathrooms
Age



**Listing 2**
21 Mohr Rd
Proximity to Subject  0.22 miles SE
List Price             324,900
Days on Market
Gross Living Area
Total Rooms
Total Bedrooms
Total Bathrooms
Age



**Listing 3**
22 Vincent Dr
Proximity to Subject  0.05 miles E
List Price             325,000
Days on Market
Gross Living Area
Total Rooms
Total Bedrooms
Total Bathrooms
Age

Page #12

## Subject Photo Page

| | | | | | | |
|---|---|---|---|---|---|---|
| Borrower/Client | | | | | | |
| Property Address | 29 Vincent Dr | | | | | |
| City | Burlington | County | Burlington | State | NJ | Zip Code 08016-3849 |
| Lender | Nitkiewicz,Thaddeus,R&Christiana,C | | | | | |



### Subject Front

| | |
|---|---|
| 29 Vincent Dr | |
| Sales Price | NA |
| Gross Living Area | 2,305 |
| Total Rooms | 8 |
| Total Bedrooms | 4 |
| Total Bathrooms | 2.1 |
| Location | SUBURBAN |
| View | RESIDENTIAL |
| Site | 10,400 Sq.Ft. |
| Quality | AVERAGE |
| Age | 14 |



### Subject Rear



### Subject Street

Page #13

## Subject Interior Photo Page

| Borrower/Client | | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 29 Vincent Dr | | | | | |
| City | Burlington | County | Burlington | State | NJ | Zip Code 08016-3849 |
| Lender | Nitkiewicz,Thaddeus R&Christiana,C | | | | | |



**Subject Interior**

**29 Vincent Dr**
| | |
|---|---|
| Sales Price | NA |
| Gross Living Area | 2,305 |
| Total Rooms | 9 |
| Total Bedrooms | 4 |
| Total Bathrooms | 2.1 |
| Location | SUBURBAN |
| View | RESIDENTIAL |
| Site | 10,400 Sq.Ft. |
| Quality | AVERAGE |
| Age | 14 |



**Subject Interior**



**Subject Interior**

Page # 14

## Subject Interior Photo Page

| Borrower/Client | | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 29 Vincent Dr | | | | | |
| City | Burlington | County | Burlington | State | NJ | Zip Code 08016-3849 |
| Lender | Nitkiewicz,Thaddeus,R&Christiana,C | | | | | |



**Subject Interior**

29 Vincent Dr
Sales Price               NA
Gross Living Area         2,305
Total Rooms               9
Total Bedrooms            4
Total Bathrooms           2.1
Location                  SUBURBAN
View                      RESIDENTIAL
Site                      10,400 Sq.Ft.
Quality                   AVERAGE
Age                       14



**Subject Interior**



**Subject Interior**

## Comparable Photo Page

| | |
|---|---|
| Borrower/Client | |
| Property Address | 29 Vincent Dr |
| City | Burlington |
| County | Burlington |
| State | NJ |
| Zip Code | 08016-3849 |
| Lender | Nitkiewicz,Thaddeus,R&Christiana,C |



**Comparable 1**

| | |
|---|---|
| 52 Vincent Dr | |
| Prox. to Subject | 0.07 miles SE |
| Sales Price | 280,000 |
| Gross Living Area | 2,440 |
| Total Rooms | 8 |
| Total Bedrooms | 4 |
| Total Bathrooms | 2.1 |
| Location | SUBURBAN |
| View | RESIDENTIAL |
| Site | 8400 |
| Quality | AVERAGE |
| Age | 14 |



**Comparable 2**

| | |
|---|---|
| 6 Vincent Dr | |
| Prox. to Subject | 0.16 miles E |
| Sales Price | 295,000 |
| Gross Living Area | 2,380 |
| Total Rooms | 10 |
| Total Bedrooms | 4 |
| Total Bathrooms | 2.1 |
| Location | SUBURBAN |
| View | RESIDENTIAL |
| Site | 12150 |
| Quality | AVERAGE |
| Age | 9 |



**Comparable 3**

| | |
|---|---|
| 66 Mohr Dr | |
| Prox. to Subject | 0.28 miles SE |
| Sales Price | 369,000 |
| Gross Living Area | 2,694 |
| Total Rooms | 10 |
| Total Bedrooms | 4 |
| Total Bathrooms | 2.1 |
| Location | SUBURBAN |
| View | RESIDENTIAL |
| Site | 7800 |
| Quality | AVERAGE |
| Age | 8 |

Page #1E

## MARKET STATISTICS

| | | | | | | |
|---|---|---|---|---|---|---|
| Borrower/Client | | | | | | |
| Property Address | 29 Vincent Dr | | | | | |
| City | Burlington | County | Burlington | State | NJ | Zip Code 08016-3849 |
| Lender | Nitkiewicz, Thaddeus, R&Christiana, C | | | | | |

### Market Statistics

Courtesy Of : Frank Tiringer 609-654-0098
Decotah Services 609-654-0098

**Monthly Statistics for the Date Range Selected**

| Date | Units Listed | Listed Volume | Listed Average | Pended | Units Sold | Sold Volume | Sold Average | Average DOM |
|---|---|---|---|---|---|---|---|---|
| Mar 2009 | 44 | 13,248,700 | 301,106 | 18 | 14 | 3,250,400 | 232,600 | 112 |
| Feb 2009 | 19 | 5,134,735 | 270,246 | 10 | 6 | 1,587,250 | 269,541 | 76 |
| Jan 2009 | 37 | 10,771,463 | 291,119 | 6 | 9 | 2,246,277 | 249,686 | 93 |
| Dec 2008 | 23 | 6,483,640 | 281,871 | 6 | 12 | 3,021,600 | 251,791 | 116 |
| Nov 2008 | 21 | 5,458,696 | 259,069 | 14 | 13 | 3,958,100 | 304,469 | 115 |
| Oct 2008 | 30 | 8,066,154 | 268,838 | 10 | 20 | 5,870,265 | 293,963 | 109 |
| Sep 2008 | 41 | 12,950,668 | 315,870 | 1 | 17 | 5,140,671 | 302,392 | 76 |
| Aug 2008 | 38 | 11,051,417 | 283,371 | 15 | 16 | 4,473,500 | 279,593 | 72 |
| July 2008 | 37 | 10,681,716 | 288,695 | 22 | 30 | 8,367,640 | 278,921 | 73 |
| June 2008 | 51 | 15,607,736 | 305,838 | 30 | 22 | 6,164,900 | 281,131 | 66 |
| May 2008 | 46 | 12,291,565 | 271,811 | 13 | 23 | 6,004,775 | 261,077 | 118 |
| Apr 2008 | 55 | 15,567,688 | 566,690 | 30 | 18 | 5,080,000 | 267,410 | 85 |
| Mar 2008 | 48 | 14,769,364 | 307,486 | 22 | 17 | 4,647,400 | 273,376 | 66 |
| **Totals:** | **490** | **143,021,200** | **291,880** | **216** | **218** | **59,826,491** | **274,488** | **90** |

**Pricing Details of Sold Units for the Date Range Selected**

| Minimum Prices | Maximum Prices | Average Prices |
|---|---|---|
| Original List Price: $79,000 | Original List Price: $740,000 | Original List Price: $299,955 |
| Sold Price: $67,000 | Sold Price: $625,000 | Sold Price: $274,485 |

*Inventory Accumulation figures are only calculated when Report End Month is the current month.*

| Market Statistics Criteria Used | |
|---|---|
| Date Range: | 3/2008 to 3/2009 |
| Price Range: | $0 to $9,999,000 |
| Property Category: | Residential |
| Area: | Burlington Twp |

© Copyright 2009 TREND MLS - Information Deemed Reliable but Not Guaranteed. Printed 4/23/2009 10:53:51 AM

[ Page #17 ]

## Location Map

| Borrower/Client | | | | | |
|---|---|---|---|---|---|
| Property Address | 29 Vincent Dr | | | | |
| City | Burlington | County | Burlington | State | NJ | Zip Code | 08016-3848 |
| Lender | Nitkiewicz,Thaddeus,R&Christiana,C | | | | |



Form MAP.LOC — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

## Appraisers License

| Borrower/Client | | | | | | |
|---|---|---|---|---|---|---|
| Property Address | 26 Vincent Dr | | | | | |
| City | Burlington | County | Burlington | State | NJ | Zip Code 08016-3849 |
| Lender | Nitkiewicz,Thaddous,R&Christiana,C | | | | | |

THIS DOCUMENT IS PRINTED ON WATERMARKED PAPER WITH A MULTI-COLORED
BACKGROUND AND MULTIPLE SECURITY FEATURES. PLEASE VERIFY AUTHENTICITY.

### State Of New Jersey
### New Jersey Office of the Attorney General
### Division of Consumer Affairs

THIS IS TO CERTIFY THAT THE
Real Estate Appraisers Board

HAS CERTIFIED

Frank  Tiringer
69 Decotah Trail
Medford Lakes NJ  08055

FOR PRACTICE IN NEW JERSEY AS A(N):  Cert Residential Appraiser

11/06/2007  TO  12/31/2009
VALID

42RC00165900
LICENSE/REGISTRATION/CERTIFICATION #

Signature of Licensee/Registrant/Certificate Holder

ACTING DIRECTOR

Decotah Services

# INVOICE

| FROM: |
| Frank Tiringer |
| Decotah Services |
| 89 Decotah Trail |
| Medford Lakes, NJ 08055 |
| |
| Telephone Number: 609 654 0098    Fax Number: 609 654 0098 |

| INVOICE NUMBER | |
| --- | --- |
| 0080945 | |
| **DATES** | |
| Invoice Date: | 4/20/2009 |
| Due Date: | 4/20/2009 |
| **REFERENCE** | |
| Internal Order #: | 0080945 |
| Lender Case #: | |
| Client File #: | |
| FHA/VA Case #: | |
| Main File # on form: | 0080945 |
| Other File # on form: | |
| Federal Tax ID: | 31-1826509 |
| Employer ID: | |

| TO: |
| Nitkiewicz, Thaddeus, R & Christiana, C |
| Nitkiewicz, Thaddeus, R & Christiana, C |
| 29 Vincent Dr |
| Burlington, NJ 08016 |
| |
| E-Mail: badge332@comcast.net |
| Telephone Number: 6097479087    Fax Number: |
| Alternate Number: |

Copy to be e-mailed to Lee Perlman, Esq.

## DESCRIPTION

| | |
| --- | --- |
| Lender: | Nitkiewicz, Thaddeus, R & Christiana, C |
| Purchaser/Borrower: | |
| Property Address: | 29 Vincent Dr |
| City: | Burlington |
| County: | Burlington |
| Legal Description: | Block 140 03  Lot 9 |

| | |
| --- | --- |
| Client: | Nitkiewicz, Thaddeus, R & Christiana, C |
| | |
| State: NJ   Zip: 08016-3849 |

| FEES | AMOUNT |
| --- | --- |
| summary single family | 350.00 |
| | |
| SUBTOTAL | 350.00 |

| PAYMENTS | AMOUNT |
| --- | --- |
| Check #: 5568    Date: 04/20/2009    Description: 350 | 350.00 |
| Check #:    Date:    Description: | |
| Check #:    Date:    Description: | |
| SUBTOTAL | 350.00 |
| TOTAL DUE | $ |

Form NIV50 — "WinTOTAL" appraisal software by a la mode, inc. — 1-800-ALAMODE

# Exhibit D

B6D (Official Form 6D) (12/07)

IN RE Nitkiewicz, Thaddeus & Nitkiewicz, Christiana C.                                          Case No. _____
_____                                                                    _____
Debtor(s)                                                                                                (If known)

## SCHEDULE D - CREDITORS HOLDING SECURED CLAIMS

State the name, mailing address, including zip code, and last four digits of any account number of all entities holding claims secured by property of the debtor as of the date of filing of the petition. The complete account number of any account the debtor has with the creditor is useful to the trustee and the creditor and may be provided if the debtor chooses to do so. List creditors holding all types of secured interests such as judgment liens, garnishments, statutory liens, mortgages, deeds of trust, and other security interests.

List creditors in alphabetical order to the extent practicable. If a minor child is the creditor, state the child's initials and the name and address of the child's parent or guardian, such as "A.B., a minor child, by John Doe, guardian." Do not disclose the child's name. See, 11 U.S.C. §112 and Fed. R. Bankr. P. 1007(m). If all secured creditors will not fit on this page, use the continuation sheet provided.

If any entity other than a spouse in a joint case may be jointly liable on a claim, place an "X" in the column labeled "Codebtor," include the entity on the appropriate schedule of creditors, and complete Schedule H – Codebtors. If a joint petition is filed, state whether the husband, wife, both of them, or the marital community may be liable on each claim by placing an "H," "W," "J," or "C" in the column labeled "Husband, Wife, Joint, or Community."

If the claim is contingent, place an "X" in the column labeled "Contingent." If the claim is unliquidated, place an "X" in the column labeled "Unliquidated." If the claim is disputed, place an "X" in the column labeled "Disputed." (You may need to place an "X" in more than one of these three columns.)

Total the columns labeled "Amount of Claim Without Deducting Value of Collateral" and "Unsecured Portion, if Any" in the boxes labeled "Total(s)" on the last sheet of the completed schedule. Report the total from the column labeled "Amount of Claim Without Deducting Value of Collateral" also on the Summary of Schedules and, if the debtor is an individual with primarily consumer debts, report the total from the column labeled "Unsecured Portion, if Any" on the Statistical Summary of Certain Liabilities and Related Data.

☐ Check this box if debtor has no creditors holding secured claims to report on this Schedule D.

| CREDITOR'S NAME AND MAILING ADDRESS INCLUDING ZIP CODE AND ACCOUNT NUMBER. *(See Instructions Above.)* | CODEBTOR | HUSBAND, WIFE, JOINT, OR COMMUNITY | DATE CLAIM WAS INCURRED, NATURE OF LIEN, AND DESCRIPTION AND VALUE OF PROPERTY SUBJECT TO LIEN | CONTINGENT | UNLIQUIDATED | DISPUTED | AMOUNT OF CLAIM WITHOUT DEDUCTING VALUE OF COLLATERAL | UNSECURED PORTION, IF ANY |
|---|---|---|---|---|---|---|---|---|
| ACCOUNT NO. 9784<br><br>Hfc - Usa<br>PO Box 15522<br>Wilmington, DE  19850-5522 | | J | Mortgage;<br>29 Vincent Dr<br>Burlington, NJ  08016-3849<br><br><br>VALUE $ 290,000.00 | | | | 320,322.00 | 30,322.00 |
| ACCOUNT NO. 8462<br><br>Hfc - Usa<br>PO Box 15522<br>Wilmington, DE  19850-5522 | | J | Mortgage;<br>29 Vincent Dr<br>Burlington, NJ  08016-3849<br><br><br>VALUE $ 290,000.00 | | | | 94,756.00 | 94,756.00 |
| ACCOUNT NO. 0670<br><br>Pnc Bank<br>PO Box 8310<br>Philadelphia, PA  19101 | | J | Purchase Money Security;<br>2008 Chrysler Sebring<br><br><br>VALUE $ 22,000.00 | | | | 19,668.00 | |
| ACCOUNT NO. 1308<br><br>Wfs/wachovia Dealer Sv<br>2143 E Convention Center Way Ste 200<br>Ontario, CA  91764-5451 | | J | Purchase Money Security;<br>2000 BMW 323ci<br><br><br>VALUE $ 12,000.00 | | | | 9,981.00 | |

_____0_____ continuation sheets attached

Subtotal
(Total of this page) $ 444,727.00  $ 125,078.00

Total
(Use only on last page) $ 444,727.00  $ 125,078.00

(Report also on Summary of Schedules.)  (If applicable, report also on Statistical Summary of Certain Liabilities and Related Data.)

© 1993-2009 EZ-Filing, Inc. [1-800-998-2424] - Forms Software Only

Page #18

## Building Sketch

| | | | | | | | |
|---|---|---|---|---|---|---|---|
| Borrower/Client | | | | | | | |
| Property Address | 29 Vincent Dr | | | | | | |
| City | Burlington | County | Burlington | State | NJ | Zip Code | 08016-3849 |
| Lender | Nitkiewicz,Thaddeus,R&Christiana,C | | | | | | |

Bedroom
Master
Bedroom
Master
Bath
Bath
Bedroom
Foyer
Bedroom
Breakfast
Bath
Living Room
Kitchen
Laundry
Dining Room
Foyer
Family

Comments:

**AREA CALCULATIONS SUMMARY**

| Code | Description | Net Size | Net Totals |
|---|---|---|---|
| GLA1 | First Floor | 1075.0 | 1075.0 |
| GLA2 | Second Floor | 1230.0 | 1230.0 |
| GAR | Garage | -420.0 | -420.0 |
| | Net LIVABLE Area | (Rounded) | 2305 |

**LIVING AREA BREAKDOWN**

| Breakdown | Subtotals |
|---|---|
| First Floor | |
| 14.0 x 35.0 | 490.0 |
| 5.0 x 25.0 | 125.0 |
| 6.0 x 30.0 | 180.0 |
| 14.0 x 20.0 | 280.0 |
| Second Floor | |
| 14.0 x 33.0 | 462.0 |
| 6.0 x 26.0 | 156.0 |
| 4.0 x 23.0 | 92.0 |
| 20.0 x 26.0 | 520.0 |
| 8 items (Rounded) | 2305 |